## MARKHAM *vs.* HUFF.

1. Where the remedy at law is not as full, complete and adequate as it is in equity, this will not deprive equity of jurisdiction, although there may exist a common law remedy.

2. A landlord having foreclosed a mortgage in the county of the residence of his tenant, which was different from the county where the rented premises were and where the landlord lived, claiming divers sums of money of the tenant for breaches of the covenants contained in the lease, and the tenant having filed a bill denying that he was indebted to the landlord anything, but alleging that the latter was indebted to him a large sum of money on account of his failure to keep his covenants in said lease, the foreclosure of the mortgage and the bill embraced all matters between the parties growing out of this lease; and the remedy in this case was more full and adequate in equity than at law.

3. Equity seeks always to do complete justice, and having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject-matter of the suit, provided the court has jurisdiction for that purpose.

4. The plaintiff having sought to foreclose his mortgage against the defendant in the superior court of the county of the residence of the latter, which was a county other than that where the leased premises were located and where the plaintiff lived, claiming divers sums for a breach of the covenants contained in the lease, and thus having to some extent gone outside of the statutory remedies provided for landlords in the collection of rents against their tenants, the whole subject-matter of the lease, the covenants of the parties thereto and the breaches thereof are before that court,

and the same cannot be inquired into and disposed of as well in law as in equity.

(a.) The superior court, in which it was sought to foreclose the mortgage, as a court of equity, has jurisdiction to hear and determine all the matters between the parties in this case; and for the purpose of doing full and complete justice, it has jurisdiction to enjoin any actions or suits between the parties growing out of the lease.

HALL, J., concurred on special grounds.

JACKSON, C. J., dissented.

April 15, 1884.

Landlord and Tenant. Jurisdiction. Equity. Before Judge SIMMONS. Bibb Superior Court. October Term, 1883.

W. A. Huff filed his bill in Bibb county against William Markham, of Fulton county, alleging, in brief, as follows: On October 16, 1879, Huff, in connection with P. F. Brown, as his partner, leased from Markham a hotel in Atlanta, known as the Markham House, for $10,000.00 per annum, payable semi-monthly, if Markham so desired. The contract of lease was as follows:

. . . . . "Said William Markham rents and leases to said Huff & Brown the property known as the Markham House, in the city of Atlanta, Ga., on the lot extending from Loyd street back to a line five feet beyond the present back fence and parallel with it, the rent or lease to continue for five years from the 18th day of October, 1879, with the privilege given to said Huff & Brown of renewing or continuing the same for five years longer at the same price and on the same conditions. The said Huff & Brown agree to pay said Markham for said Markham House and furniture contained therein ten thousand dollars ($10,000.00) per annum, payment to be made monthly, say on the 5th day of each month for the preceding month, and each payment to be the sum of eight hundred and thirty-three $\frac{33}{100}$ dollars ($833.33). The first payment to be made on the 5th day of next November, and which will be for the fractional part of the present month, say from the 18th of October inst. to the first of next November. The said Huff & Brown are to use the house for hotel purposes and no other. They are to take the hotel and furniture in its present condition and keep it in like condition, the natural wear and tear excepted, and at the expiration of the lease to return it in like condition. It is understood that the bedding, table-linen, towels, curtains, carpets, etc., are to be kept up and returned in condition as now re-

ceived, an inventory of which is to be made and kept as a part of this contract. And the said Huff & Brown shall have the privilege of buying the inventoried property for the sum of twelve thousand dollars ($12,000.00) at any time during the first twelve months of this lease. And if such purchase shall be made, then the annual rent of the Markham House shall be reduced to eight thousand five hundred dollars ($8,50 )) per annum, and be paid in like monthly installments, as before mentioned. The said Huff & Brown are to keep the house neatly painted and kalsomined on the inside and to keep the wells and pumps in good order; also to keep the gas and water-pipes, plumbing and cooking apparatus, etc, in good repair. It is fully agreed that the Markham House shall be kept in every respect as a first-class hotel. . . . . . . . (Markham reserved the use of certain rooms and certain other privileges, not material here. Provision is made in case of the death of any one of the parties, or of the destruction or injury of the hotel by fire or storm.) . . . . . The said Huff & Brown are to run the house at their own expense and pay for gas and city water that they use, having the right to use the water on the premises as they please. . . . . . . . The said Markham hereby agrees to place a marble tiling floor in the office, and to face the front of brick columns with iron casing as far up as the rock partition in the middle of the column, and to give possession of the office now occupied by J. C. Peck within the next thirty days. The tiling to be laid within nine months from this date, and the facing of the brick columns to be done within nine months. The (said) Markham also agrees to repair the steam boiler in the kitchen by putting in new flues and whatever else may be necessary to render it safe and in a good working condition. The said Markham hereby agrees to keep the outside of the building properly painted and to keep the roof in proper condition, etc." . . . . . . .

Below this appears the following:

"ATLANTA, September 20, 1880.

" The said Markham within named having reduced the rent on the within lease or contract for the first year to seven thousand ($7,000.00) dollars, now agrees to reduce the rent for the second year, and no longer, to seven thousand five hundred dollars ($7,500.00), and the rent to be paid monthly as heretofore and as specified in the within contract or lease. It is also agreed that the putting down of the tiling in the office room named in the within contract is not to be done during the second year. The balance of the within contract or lease to remain in force against all the parties. The said P. F. Brown, of the firm of Huff & Brown, is to remain at said Markham House during the said second year, and give the business his personal attention."

Afterwards, on July 19, 1881, Huff assumed the entire responsibility of the lease, Brown selling out to him and retiring. Huff and Markham then executed a contract as follows:

"Whereas, on the 16th day of October, 1879, William Markham entered into a contract with W. A. Huff and Philip F. Brown, whereby the said Markham leased to the said Huff & Brown the Markham House hotel property, which contract is in writing, signed by all of the parties, and for greater certainty as to its provisions, the same is hereby referred to.

"And whereas, the said Brown has sold to the said Huff his interest in and under said lease, the said Huff having agreed with said Brown to fully carry out said contract with said Markham in every particular; and whereas, the said Huff desires to continue to run the said hotel under said original contract for the unexpired term called for therein: Now, this contract entered into this the 19th day of July, A. D. 1881, by and between William Markham and William A. Huff, witnesseth that in consideration of the premises and in consideration of the benefit accruing to, and to be derived by, said Huff, by reason of said Markham consenting that said Huff may individually run said hotel business under said original contract, and that said Brown may retire from the management of said business, and that said Markham shall look to said Huff alone for the future performance of said contract, the said Huff hereby agrees and contracts to carry out and fully perform all the covenants and agreements and stipulations specified in said original contract in as full and ample manner as the said Huff & Brown would have been bound to perform the same, had there been no change in the management and copartnership of said hotel. To secure the full and complete performance of said original contract as (on the) part of said Huff. . . . (Huff here gave to Markham a mortgage on certain personal property, and also on certain realty).

. . . . "It is distinctly understood and agreed that the taking of this mortgage by said Markham shall in no way affect the right of said Markham as against said Huff under said original contract, and said Markham may use all the remedies for the enforcement of said contract given to landlords under the law of said state, in case said contract is not complied with, etc. . . . . . . .

"And the said Markham hereby obligates himself to said Huff to carry out and fully perform all the obligations mentioned in said original contract, the same as he would have been bound to do had the said Huff & Brown continued to run said hotel jointly."

Under the first contract, he and Brown entered into possession, and after the retirement of Brown, he continued in

possession until the present time.   The rents were regularly paid until October 18, 1882, when, on account of the injurious and counter-claims hereinafter stated, he refused to pay the monthly rents, insisting that Markham had no right to collect them until he should have responded for the injuries hereafter stated, the damages arising from which were placed at $25,000.00.   From the time of the refusal to pay rent to the filing of the bill, even if no recoupment were allowed, the amount due to Markham would be less than $7,000.00.   On January 5, 1883, Markham sued out and placed in the hands of the sheriff of Fulton county a process to dispossess Huff as a tenant holding over, for non-payment of rent, claiming that $1,536.86 was due.   Huff filed a counter-affidavit and gave bond, and the proceeding was returned to Fulton superior court for trial.   On March 5, 1883, Markham sued out a similar process, claiming the sum of $1,600.00 to be due for rent from January 3 to March 5.   Another counter-affidavit was filed and bond given, and the case returned to Fulton superior court for trial.   When the first proceeding was instituted, application was made to the judge of the superior court of the Atlanta circuit for injunction, on the ground, among others, that Markham could and would institute monthly or semi-monthly the same kind of proceeding, and annoy and harass Huff with a multiplicity of suits growing out of the same matter.   On the hearing of the application for injunction, counsel for Markham insisted that there could be no other such proceeding, but that the whole claim for rent up to the time of the trial was involved in that proceeding.   The injunction was refused, whether on that ground alone complainant is unable to tell.   Complainant is not indebted to Markham any sum whatever; but Markham has injured him by breach of his cross-covenants in the sum of $25,000.00.   He failed and refused to repair and put in order the range mentioned in the lease, and compelled complainant to purchase and put up one at an expense of $600.00.   Complainant has

also built a kitchen or cooking apparatus at a cost of $1,000.00, which was absolutely necessary, and which Markham agreed to do, but refused to comply with his agreement. Markham has also refused, up to the present time, to put down the marble tiling, notwithstanding he well knew that his agreement to do so was one of the main inducements to the lease, and though it was stated that complainant would not have the hotel without the tiling was put down. The damage is alleged to be $10,000. Markham has further refused to paint the outside of the hotel, though four years of the time have expired. The outside of the building is old and dingy in appearance, and unattractive to guests and visitors. The damage is set at $5,000.00. Markham has further refused to keep the roof from leaking, or to repair the same, although he has full knowledge that it leaks in a great many places, damaging the walls and furniture, and driving the guests into other parts of the building. The damage is set at $3,000.00.

Complainant alleges that he has put into the house about $21,000.00 worth of property and decorative improvements. When he entered the hotel, the inner walls were poorly painted and were old and dingy; most of the lamps were cheap, common and badly worn; there was no suitable range and kitchen, and new rooms were needed for visitors and guests. Complainant purchased and put down carpets of superior quality, painted the inner walls in oil, and frescoed the office and arcade at great expense, built a kitchen, furnished a range, and built and furnished eight new rooms, besides purchasing many other things, such as linen, towels, curtains, and, in fact, everything necessary to the use of a first-class hotel, amounting in the aggregate to $21,000.00. All of this property is now in the hotel, ordinary wear and tear excepted; and if complainant is ejected, Markham will become improperly possessed of the property so purchased, and obtain the benefit of the improvements so made; and this complainant believes to be his object.

Complainant alleges that, on May 29, 1883, Markham made affidavit, claiming double rents from January 3, 1883, covering the period for which complainant had already given bond and filed a counter-affidavit. In this last proceeding, Markham claims over $8,000.00, of which $1,900.00 is for single rent to January 3, 1883, and $7,000.00 for double rent after that time. This proceeding was placed in the hands of the sheriff of Fulton county, and contemporaneously Markham foreclosed the mortgage held by him on the personal property of complainant, and caused the clerk of Bibb superior court to issue a mortgage *fi. fa.* This he threatens to levy at once on all the personalty covered by it, and to advertise and sell the same. If he is allowed to do so, it will effectually prevent complainant from continuing and carrying on his business, and will work irreparable injury to him. The affidavit of foreclosure made by Markham was as follows:

"GEORGIA—Bibb Coun

Personally appeared before me, Matt. R. Freeman, a notary public and *ex-officio* justice of the peace in and for said county, William Markham, who, on oath, says that William A. Huff, of said county, is indebted to him on the annexed mortgage the sum of nine thousand five hundred and thirty-seven and 89–100 dollars, besides interest, said sum being made up of the following items, to-wit: $763.32 for rent under its lease mentioned in the annexed contract, and due November 18, 1882; $380.66 rent due under said lease December 3, 1882; $393.89 for rent under same lease due December 18, 1882; $389.77 for rent due January 3, 1883, each of said sums bearing interest from time same became due as above; also the following sums, in par of first named sums, to-wit: Ten thousand dollars for damage and injury by said Huff to the furniture, carpets, crockery, table-ware, linen, bed and table linen, bedding, silverware and other things included in the inventory referred to as part of the contract in the said mortgage and lease; also five thousand damage and injury caused to said Markham, by damage to the general character and reputation of the said hotel, by said Huff failing to comply with his contract to keep up the same as a first-class hotel, and letting it run down in character by his negligence and inattention to the same; all such amounts and interest as aforesaid, and now justly due to deponent."

Each of these items complainant denies, and charges that Markham has injured him as already stated.

The prayer was for an injunction to restrain Markham from proceeding under the foreclosure of the mortgage, or from proceeding to evict complainant as a tenant holding over for double rent; that an account of the claims of the parties be had, and decree be entered for the amount due complainant; that, in order to prevent a multiplicity of suits, all suits and proceedings touching the lease-contract and rent claims be enjoined, and that all matters in dispute be determined on the trial of this bill.

Attached to the bill as exhibits were the original contract of lease, the second or renewed contract, the affidavit of Markham foreclosing the mortgage, and the mortgage itself, all of which are set out above.

Defendant demurred to the bill for want of equity, and because there was an adequate common law remedy. He also demurred to that portion of the bill relating to damages from failure to put down marble tiling in the office, to paint the outside of the building and to keep the roof in repair, because the allegations concerning them were too general; also to the allegations concerning the expenditure of $21,000.00 by plaintiff, because they were insufficient to warrant a recovery; also to the bill, because the copies of the mortgage *fi. fa.* and the statutory proceedings pending in Fulton superior court were not exhibited thereto; also to all parts of the bill not strictly defensive to the foreclosure of the mortgage, because the sole defendant to the bill resides in Fulton county, while the bill is filed in Bibb county, because the proceedings pending in Fulton county are for the recovery of real estate, and the superior court of that county alone has jurisdiction, and the question of the liability for double rent is not involved in the defence to the mortgage.

The court overruled the demurrers, and defendant excepted.

E. N. BROYLES; LANIER & ANDERSON, for plaintiff in error.

v 72-57

Lyon & Gresham; W. A. Hawkins, for defendant.

Blandford, Justice.

1, 2, 3. Where the remedy at law is not as full, complete and adequate as it is in equity, this will not deprive equity of jurisdiction, although there may exist a common law remedy. Code, §3095. See 35 *Ga.*, 261; *Id.*, 216; 16 *Id.*, 66; 36 *Id.*, 545; 8 *Id.*, 459. These cases fully sustain and illustrate the principle stated.

Looking at the facts of this case, plaintiff in error has foreclosed a mortgage in Bibb superior court upon the property of defendant, wherein he claims divers sums of money of defendant for breaches of the covenants contained in the lease of the Markham House; defendant denies these breaches, and contends that he is not indebted to the plaintiff anything, but that, on the contrary, plaintiff is indebted to him a large sum of money on account of his failure to keep his covenants in said lease. The foreclosure of the mortgage by the plaintiff and the bill filed by the defendant embrace all matters between the parties growing out of this lease, so that it appears to us that the remedy is more full and adequate in equity than at law. Equity seeks always to do complete justice; hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject-matter of the suit, provided the courts have jurisdiction for that purpose. Code, §3085.

4. The plaintiff in error having sought to foreclose his mortgage against defendant in error in the superior court of Bibb county, in which he claimed divers sums for a breach of the covenants contained in the lease, thus having to some extent gone out of the statutory remedies provided for landlords in the collection of rents against their tenants, the whole subject-matter of the lease, the covenants of the parties thereto and the breaches thereof are before that court, and the same cannot be inquired into and disposed of at law as well as in a court of equity.

The superior court of Bibb county, as a court of equity, has jurisdiction to hear and determine all such matters between the parties in this case, and for the purpose of doing full and complete justice, that court has jurisdiction to enjoin any actions or suits between said parties growing out of said lease. Without this power, the court could not do full and complete justice between the parties.

The plaintiff in error having appealed to the superior court of Bibb county and submitted to its jurisdiction in seeking to foreclose his mortgage against the defendant, will have also to submit to the equitable jurisdiction of that court when invoked by his adversary, when it is shown that this exercise of jurisdiction is necessary to afford an adequate, full and complete remedy, and the same is necessary to do complete justice between the parties in this case, and that court will proceed to give full relief to the parties in reference to all matters growing out of said mortgage, the subject of the suit, and settle by one decree the numerous issues between the parties growing out of the lease.

When a person goes out of the county of his residence, and seeks relief at law against another in the county of the latter's residence, in such case, when it may become necessary, according to the principles of equity, to adjust the matters in controversy between the parties to said action at law, at the instance of the defendant, the superior court having jurisdiction of said action at law, may, as a court of equity, entertain a bill, and may decree and grant full and complete relief to the parties before it, and has jurisdiction to grant relief against the plaintiff in the action at law, although he may not reside in the county where such bill is filed, his conduct in appealing to said court is equivalent to consenting to the jurisdiction of the same, as to all matters growing out of said action at law.

In this case, there is equity in the bill of defendant in error, and the superior court of Bibb county, as a court of equity, has jurisdiction of the same, and the decree of the

Markham vs Huff.

court overruling the demurrer of the plaintiff in error and sustaining the bill is hereby affirmed.

HALL, Justice, concurred specially, but furnished no written opinion. He based his concurrence on the special facts of this case.

JACKSON, Chief Justice, dissenting.

I dissent from the judgment of the majority of the court, affirming the judgment of the superior court, because the case is *res adjudicata* adversely to that judgment. It is due to the court below to say that the point making it *res adjudicata* had not been adjudicated when the demurrer to the present bill was overruled by that court; but after that court had decided on the bill now before us, a bill precisely like this, between the same parties, was dismissed by the superior court of Fulton county, and that judgment of dismissal was affirmed by this court on demurrer thereto, on the ground that there was no equity in it. If there was no equity in this case when brought here from Fulton, there certainly can be none in it when brought here from Bibb.*

If Fulton superior court had judication, its judgment affirmed by this court concludes the parties. That Fulton superior court did have jurisdiction is indisputable, because Markham, the defendant to the bill, and the only defendant to it, resides in Fulton. Therefore, if the bill now before us from Bibb be the same bill which was before us from Fulton last term, Huff is concluded by the judgment in Fulton superior court affirmed here last term.

Is it the same bill? It is the identical bill now before us. It raises the same issues, invokes the same relief, and prays for the same damages. There is but one point of difference between the two, and that is that Markham sued Huff in Bibb superior court to foreclose a mortgage on real estate there, given to secure the rent of the hotel,

*71 Ga., 555.

and this bill now before us was filed to enjoin that fore-closure and for relief against Markham for failure on his part to comply with the terms of the lease, to the great damage of Huff; whereas in the case from Fulton, the mortgage on realty in Bibb was of course not involved. Bibb county acquired jurisdiction by reason of Markham's suing Huff there, so far as to defend that suit, and to stay proceedings to foreclose, but not to give a decree for dam-ages against Markham, unless strictly springing out of that mortgage, the suit to foreclose which gave jurisdiction to the Bibb court.

So that, when it was decided that Huff had no equity against Markham to stop the collection of his rent over-due, by this court, in the case from Fulton, which county had full and complete jurisdiction, the effect of that decis-ion is that he had no equity to stop the mortgage in Bibb, to collect the same rent—the equitable facts alleged in the two bills being precisely the same.

The judgment from which I dissent reaches the remark-able result that a court having only partial jurisdiction of the person of the defendant, to-wit, to grant complainant relief, stopping the mortgage process until certain equities could be adjusted, can overrule a decision in another court, between the same parties, which had complete jurisdiction of the whole case for all equitable purposes; and thus the less jurisdiction would possess not only greater powers, but powers unheard of before in any court, of reversing a judg-ment between the same parties on the same allegations of equity.

It is vain to reply that, in the case when here from Ful-ton, the landlord was pursuing his statutory rights to eject the tenant for non-payment of rents, whereas in Bibb he was enforcing a lien to secure those rents. No substantial distinction exists between the two remedies, so far as equi-table rights to stop the landlord are concerned. If he has such rights, not springing out of the mortgage alone, but out of the lease, equity would interpose as soon to suspend

the collection of the rent notes by the ordinary mode as by their collection by the foreclosure of the mortgage. If the tenant had no equity to deny payment of the notes he gave for the lease of the hotel, it is very hard to find an equity he would have to deny payment of the same notes secured by mortgage, unless that equity sprang directly out of the mortgage, independently of the lease, of which there is no pretense. The very same equity which the tenant set up against the notes, to-wit, the damages done him by the landlord's breach of the covenants of the lease, is the equity, and the only equity, which he now sets up against the mortgage.

But to make assurance doubly sure, it is expressly stipulated in the lease itself that the taking the mortgage, with all the rights and remedies therein given, shall not, in the slightest degree, affect the rights and remedies of the landlord. So that, whatever right he had to collect the notes by the proceeding under the statute, over any so-called equities which Huff might set up, Markham reserved the same in respect to the collection of the mortgage. The original lease was made to Brown & Huff, and Huff bought out Brown, and to get Markham's assent thereto, and to make him as secure as if Brown had remained one of the lessees, Huff gave the mortgage sued in Bibb superior court. Therein are these words: "It is distinctly understood and agreed that the taking of this mortgage by said Markham shall in no way affect the right of said Markham as against said Huff under said original contract, and said Markham may use all the remedies for the enforcement of said contract given to landlords under the law of said state in case said contract is not complied with," etc.

Yet, in the teeth of this agreement, of this solemn covenant, it is held by the majority of this court that a judgment affecting Markham's rights to the extent of allowing Huff equities, which, outside of the taking the mortgage, this court unanimously held, when the case was here from Fulton, Huff did not have, and enjoining Markham from

prosecuting in his own county, where the property leased lay, " all the remedies for the enforcement of said contract given to landlords under the law," be affirmed; and in so deciding, in my judgment, with great deference and respect to theirs, I must say it has not only reversed what a unanimous court between the same parties declared to be the law of the case here made at the very last term, but has annulled the agreement and covenant between the parties; and all this has been done, too, in violation of the spirit of the constitution, which gives to all men the right of trial in equity cases, if relief be substantially prayed against them, in their own counties.   The effect of the decision is to transfer the whole case from Fulton, the residence of the defendant, to Bibb county, the residence of the complainant, contrary to the law and the constitution, as I interpret them.

Therefore, I put this dissent on record.