BOARD OF EDUCATION OF LONG COUNTY *et al.* *v.*
BOARD OF EDUCATION OF LIBERTY COUNTY.

No. 8104.   JULY 29, 1931.

*M. Price* and *H. M. Hodges,* for plaintiffs in error.
*Oliver & Oliver,* contra.

RUSSELL, C. J. The political subdivision of Georgia now known as Long County was carved or taken from Liberty County as it existed before the dismemberment of Liberty County. Before the territory now known as Long County was cut off from Liberty, there had been purchased for the use of the school children of Liberty County, as then constituted, a large number of desks and other necessary school equipment, which in its distribution was equally divided between the schools in Long County as created, and in the remainder of Liberty County as it now exists since the taking of the territory which constitutes Long County. Long County began functioning as such in 1921, and in March of that year the Board of Education of Long County agreed to pay one half the amount of the original purchase-price which was unpaid. The balance of the purchase-price of the desks, etc., was due in three annual instalments. Long County did pay half of the balance due in 1921, but thereafter failed to comply with its prior agreement and refused to pay the remainder due under the agreement. The refusal of the Board of Education of Long County to comply with its promise to pay for the school desks and other appliances, from the use of which it has enjoyed all the benefits, is the basis of the present writ of error. In accordance with the provisions of the code of school laws of 1919 (Acts 1919, p. 288), the Board of Education of Liberty County filed a petition to the State school superintendent, and asked that he adjudge and require the Board of Education of Long County to pay for the school supplies which had been received by it, as it had agreed to do.

The State school superintendent sustained the contention of Liberty County after hearing evidence, and held that the Board of Education of Long County was liable. From this judgment Long County appealed to the State Board of Education, which affirmed the decision of the State school superintendent. From the decision of the State Board of Education there is no appeal. Liberty County filed a petition upon which a mandamus nisi was issued. Upon the hearing, by consent of both parties all issues of law and fact having been submitted to the trial judge without the intervention of a jury, a mandamus absolute was granted, to which exception is taken.

Leaving out all subsidiary matters, the merit of the present writ of error depends upon whether the lower court erred in finding against the defendant's plea of the bar of the statute of limitations. This question in turn depends upon a solution of the problem as to whether the court correctly held that the judgment of the State Board of Education is the judgment of a tribunal which can properly be held to be a court whose final adjudications stand upon a like footing with other courts from whose judgment there is no appeal. The conclusion of a judicial tribunal is nothing more than brutum fulmen if the final adjudication can not be enforced. Tribunals whose findings are merely advisory in their nature may be created, and as a matter of fact exist, but these can in no circumstances be held to be judicial in their nature. In their constitution there inheres no judicial function. To their duties no judicial function appertains. It is to be borne in mind also that in this State the right of the General Assembly to create departments or subdivisions of government whose duties are purely ministerial is practically unlimited. In consideration of the foregoing statements, what position does the State Board of Education occupy with relation to the administration of the public-school system of this State? Under the provisions of the code of school laws of 1919, if the duties of this State board are merely ministerial, or no more than advisory, it of course has no power to render final judgment in any matter affecting the conduct of the Georgia system of public schools. We quote the following provisions from the code of school laws (Acts 1919, p. 288) : The caption of the act, so far as is material at this time, is "An act to codify the school laws of the State of Georgia . . ; to revise the school laws of the State;

to provide for a State Superintendent of Schools, *State Board of Education,* a State Board for Vocational Education, County Superintendent of Schools, *County Board of Education,* . . and other officers; to provide the method of their selection, their *duties, powers,* and compensation; and for other purposes." The act itself is subdivided into articles, sections and subsections. In subsection 11 of section v of article VIII the General Assembly declared that "The Board of Education sh'all be the final court of appeal to hear and decide all matters which have been appealed from the State superintendent of schools." In subsection 13 of the same section and article the State Board of Education is made an advisory body for the specifically named purpose of advising the State school superintendent when he desires to consult with the board "when he is in doubt as to his official duty," but it is constituted in the same section as "also a body in the nature of a court to which appeals shall be made from the decisions of the State school superintendent upon any question touching the construction or administration of the school laws, and the decision of the State board shall be final and conclusive." In considering whether the State Board of Education was or was not a court at the time it passed upon the controversy before the trial judge in the application then before him for a mandamus to compel the county board of education of Long County to comply with the adjudication of the State Board of Education, it would seem to be proper to consider the power of county boards of education in such matters as are by law made the subject of appeal to the State Board of Education.

Subsection 85 of section v of article VIII (Acts 1919, p. 324) of the code of school laws is as follows: "Sec. 85. Powers of County Boards as School Court. The County Board of Education shall constitute a tribunal for hearing and determining any matter of local controversy in reference to the construction or administration of the school law, with power to summon witnesses and take testimony if necessary; and when they have made a decision, said decision shall be binding upon the parties. Either of the parties shall have the right of appeal to the State school superintendent, and said appeal shall be made through the county superintendent in writing, and shall distinctly set forth the question in dispute, the decision of the County Board, and testimony as agreed upon by the parties to the controversy, or, if they fail to agree, upon the

testimony as reported by the Superintendent." It will be seen that the provisions for appeals from the decisions of county boards of education, as just stated, are in harmony with subsection 13 of section v of article VIII, and that the provision of subsection 11 (in the same article and section) that "The Board of Education shall be the final court of appeal to hear and decide *all* matters which have been appealed from the State superintendent of schools," removes any ambiguity as to whether the State Board of Education is a "final court" in the particular instance now before us. In defining the duties of the State school superintendent it is said (subsection 54, section v, article VIII; Acts 1919, p. 311) : "He shall be charged with the administration of the school laws, and general superintendence of *the business* relating to the common schools of the State, . . and by what is thus communicated to them they shall be bound to govern themselves in the discharge of their official duty; provided, there shall always be an appeal from the State school superintendent to the State Board of Education." Thus we see that it was the design of the General Assembly to place the determination and adjudication of all questions arising from *the "administration" of the common school laws of Georgia, or growing out of their "business"* in the hands of the authorities to whom the common schools of the State are specially committed. First the County Board of Education, which is to decide these questions, with the right of appeal to the State school superintendent, and a further and final appeal from the decision of the State school superintendent to the State Board of Education. A reading of the sections or paragraphs of the code of school laws which relate to the school-book commission, and a consideration of the very large number of contracts which involve nothing else but financial liability, would seem sufficient to illustrate and demonstrate that it was the legislative intention to create what may be called a school court for the adjudication of all such questions as that before us, which involves the monetary liability or nonliability of the Board of Education of Long County to the Board of Education of Liberty County. There can be no question that the legislature has authority to constitute this tribunal which is described in the act as one in the nature of a court. It is not necessary at this time to decide whether the jurisdiction which was conferred upon the school courts by the act of 1919 is exclusive

or merely concurrent. Article 6, section 1, paragraph 1, of the constitution of this State (Code of 1910, § 6497) declares that "The judicial powers of this State shall be vested in a Supreme Court, a Court of Appeals, superior courts, courts of ordinary, justices of the peace, commissioned notaries public, and such other courts as . . may be established by law." Under this provision the General Assembly in 1890 (Acts 1890-91, p. 96) established city courts upon the recommendation of the grand jury in any county of the State having a population of 15,000 or more, and county courts were established. The city courts which were established upon recommendation of the grand jury had jurisdiction over the whole county, but by virtue of other legislation numerous city courts have been authorized, in Barnesville, Buford, and other municipalities, which were not county-sites at the time of the creation of the court, whose jurisdiction extended only to a portion of the county within which the municipality was situated. To all these inferior judicatories jurisdiction was denied as to all matters of which the superior court had exclusive jurisdiction, but the monetary amount to which jurisdiction was confined was entirely dependent upon the legislative will.

Since it must be conceded that the General Assembly has the right to create courts which shall have exclusive jurisdiction to deal with all matters embodied in the conduct of schools, except those which present questions of which the superior courts have exclusive jurisdiction, we are of the opinion that the trial judge in this case did not err in holding that the judgment rendered by the State Board of Education could be enforced, and of right should be enforced, by mandamus. While "mandamus does not lie as a private remedy between individuals to enforce *private* rights, nor to a public officer who has an absolute discretion to act or not, . . it is not confined to the enforcement of mere ministerial duties." Code of 1910, § 5441. The judgment rendered by the State Board of Education was not against the individuals who composed the Board of Education of Long County, but it required the persons composing the Board of Education of Long County, in their official capacity, to recommend to the county commissioners of that county to levy a tax in amount sufficient to pay the Board of Education of Liberty County the amount which the "tribunal in the nature of a court" found to be due to the Board of Education

of Liberty County. Mandamus is an appropriate remedy to enforce official duty. "All official duties should be faithfully fulfilled; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." Code of 1910, § 5440.

In *Daniels* v. *Commissioners of Pilotage*, 147 *Ga.* 295 (93 S. E. 887), which involved the grant of a mandamus absolute, and in which the application for mandamus was held by this court to be properly denied, it was plainly pointed out that the remedy of mandamus would have been applicable to enforce the performance of judicial function, had the exercise of such jurisdiction been involved under the facts submitted to the superior court; and that the mandamus absolute was denied under the circumstances, because the commissioners of pilotage were vested with a discretion as to whether they would authorize licensed pilots of the bar of Tybee to operate a boat separate and independent from the pilot boat to which, under the rules of the commissioners, all pilots were required to be attached, and that their discretion was not abused. In the opinion *Commissioners of Pilotage* v. *Low, R. M. C.,* 298, *Low* v. *Commissioners of Pilotage, R. M. C.,* 302, and *Healey* v. *Dean,* 68 *Ga.* 514, were cited. In the first of those cases it was held that where a new jurisdiction was created by statute, proceeding along the course of the common law, the superior court, on certiorari, would affirm or quash its proceedings. Also, that where a new jurisdiction is created by statute without prescribing its form of proceeding, such jurisdiction may pursue its own forms and regulations, if not inconsistent with the laws of the land. The court stated, as the reason for its judgment, that "No notice whatever was given to the defendants of this proceeding; no opportunity afforded them of being heard in their defence," that the commissioners in the trial held by them "have not acted according to the provisions of the act creating them, and that their proceedings, both in regard to the imposition of fines and the suspension, must be quashed." In *Low* v. *Commissioners,* supra, it was held that the commissioners of Pilotage constituted a court for the purpose of suspending a pilot, under the provisions of the 7th section of the legislative act of 1799. "There are certain

principles, however, recognized by all judicial tribunals in our country." Thereupon the board decided that Low was guilty, and that his warrant or license be annuled and revoked, and he be totally suspended. In response to the argument that "this is nothing more than the opinion of the court; it is their determination and sentence, and not the sentence of the law; that they should have proceeded, 'therefore it is considered by the court,' ideo consideratum est per curiam, which implies that the judgment is the act of law, pronounced by the court after due deliberation," Judge Charlton in his opinion replied that "Whatever strictness and technical precision may have existed at one time, as to the forms of pleading and entering verdicts and judgments, the practice and tendency of the courts have been to relax that strictness, and to disentangle justice of those more formal fetters which impeded her march, without rendering her progress more certain. . . These tribunals are held with the utmost strictness within the exact limits of the jurisdiction prescribed to them by statute, but they are reviewed with the utmost liberality as respects regularity and form." Throughout the opinion the board of commissioners of pilotage created by the act of the General Assembly was dealt with as a court, and its judgment as such was affirmed. In that case, as in this, it was pointed out that no question was presented as to the unconstitutionality of the act. In *Healey* v. *Dean,* supra, this court throughout its decision dealt with the commissioners of pilotage of the port of Darien as a court, and reversed the decision of the superior court for the reason that the court erred in sustaining a certiorari, while in the opinion of this court the certiorari should have been dismissed.

It does not lie in the mouth of the plaintiffs in error in this case to question the jurisdiction of the State school superintendent or of the State Board of Education, because by its own act the State school superintendent in the first instance, and the State Board of Education in the final trial, obtained jurisdiction. In view of what we have said, the judgment rendered by the State Board of Education was not barred by the statute of limitations. Seven years must pass after the rendition of a judgment before it is barred. The judgment in this case was rendered on May 23, 1924, and this application for mandamus was made on August 12, 1930, more than nine months before the expiration of seven years from the date

of the rendition of the judgment on May 23, 1924. So the contention that the debt and the obligation to pay it, which is not denied, is barred by the statute of limitations, must be overruled. Thus the judgment of the superior court, requiring the Board of Education of Long County to recommend to the Board of Commissioners of Roads and Revenues of Long County that they levy a tax sufficient to pay the demand, was an appropriate judgment to enforce the collection of the debt, since the county board of education has no power to impose a levy of taxes for school purposes, and the board of commissioners of roads and revenues is the only power that can raise money by levying taxes.

*Judgment affirmed. All the Justices concur, except Beck, P. J., who dissents, and Gilbert, J., absent.*

BECK, P. J. I dissent from the judgment in this case, being of the opinion that the ground of the demurrer filed by the board of education of Long County, to the effect that the decision of the State superintendent of schools, which was afterwards affirmed by the State Board of Education, was without effect and void, because that tribunal was without jurisdiction to render such decision, should have been sustained.