22361.   MURDOCK v. PERKINS et al.
22379, 22380.   PETERS et al. v. PERKINS et al.;
and vice versa.

ARGUED FEBRUARY 10, 1964—DECIDED MARCH 5, 1964—
REHEARING DENIED MARCH 18, 1964.

758

*Zade Kenimer, Clower & Royal, E. J. Clower,* for Murdock.

*Wright, Walther & Morgan, Clinton J. Morgan,* for Perkins et al.

*Eugene Cook, Attorney General, Allan T. Hodges, Assistant Attorney General,* for Peters et al.

MOBLEY, Justice. ■ The writ of error in the case of The State Board v. The County Board, with the cross bill, and the case of J. F. Murdock v. Floyd County Board will be disposed of by this decision.

We first consider exceptions to the judgment overruling the general demurrer of the State Board of Education to the petition brought by the Floyd County Board of Education and the cross bill therein. The questions presented in the main bill are: 1. Does the petition state a cause of action for equitable relief? 2. Is this a suit against the State of Georgia? 3. Did the Board of Education have the legal authority to review and reverse its previous decision affirming the action of the Floyd County Board of Education in dismissing the Superintendent of the Floyd County Schools?

The petition does state a cause of action for equitable relief. There is no merit in the contention that the plaintiffs had an adequate remedy at law. The County Board sought to enjoin acts stemming from an allegedly void judgment of the State Board of Education on grounds that said judgment was rendered by the Board when it lacked the legal authority to reconsider and reverse its prior decision, and that their judgment was therefore void and of no force and effect.

*Code* § 37-120 provides, "Equity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law; but a mere privilege to a party to sue at law, or the existence of a common law remedy not as complete or effectual as the equitable relief, shall not deprive equity of jurisdiction." See *Hollingshead v. McKenzie,* 8 Ga. 457 (2); *Markham v. Huff,* 72 Ga. 874 (1); *Cummings v. Robinson,* 194 Ga. 336 (21 SE2d 627). Assuming, without deciding, that there was a remedy at law by either certiorari or quo warranto as is contended, such remedies nevertheless would not have afforded an adequate remedy. These remedies at law were not adequate

to immediately and fully restrain Murdock from interfering with the County Board in the operation of the schools by assuming or attempting to assume the office of Superintendent of Schools and carrying on the duties of the office, and by claiming present and past pay as such.

In *Cummings v. Robinson*, 194 Ga. 336, supra, petitioner sought to enjoin the defendant from going into, taking part in, or otherwise seeking to exercise the functions of a county commissioner. The contention on demurrer was that the petition failed to set out a cause of action for equitable relief and that there was an adequate remedy at law by quo warranto. This court in holding that the petition stated a cause of action for injunctive relief stated, "In such case the writ of quo warranto, though itself a speedy remedy, could not supply that immediate and preventive relief which could be granted through the writ of injunction, and thus would not be as complete or effectual." See also cases cited therein at page 346.

In *Moultrie Milk Shed, Inc. v. City of Cairo*, 206 Ga. 348, 351 (57 SE2d 199), injunction was sought to prevent the defendants from acting to enforce a void city ordinance. The defendants contended that certiorari was the sole available remedy; therefore, petitioner was not entitled to equitable relief. In reply thereto this court stated, "As to the specific matters embraced in cases that are being reviewed by certiorari, the position of counsel is sound; but as to the injuries subsequent thereto resulting from the acts or threatened acts of the defendants, the petitioner is entitled to relief in equity . . . provided it be held that the ordinance in question is void."

Injunction afforded the most effectual and complete relief in this case, as well as the only adequate remedy, because neither certiorari nor quo warranto would have provided the instant relief needed to prevent injurious acts by Murdock based on a void judgment.

■ The contention that the present suit is in effect one against the State, instituted without its consent, and consequently not maintainable, is without merit. The real test of whether or not an action is one against the State is stated in *Georgia Public Service Commission v. Atlanta Gas Light Co.*,

205 Ga. 863 (55 SE2d 618), as follows: "In determining whether the action is one against the State where the suit is against an agency or officer of the State, the nature of the suit or relief prayed must be considered, and not merely the position or character of the agency or officer against whom the action is brought. The question is, does the action affect a contract or property right of the State, so that a judgment against the State agency or officer will bind the State or control future State action? The State's interest must be of such substantial nature that the result of the action affects it as a sovereign entity."

The instant case does not affect a contract or property right of the State. The judgment does not bind the State or control future State action, but merely settles a procedural matter relating to the jurisdiction of the State Board of Education to modify or reverse a previous decision made by it. The State's interest is not of such a substantial nature that the result of the action affects it as a sovereign entity.

This is a suit against the ten members of the State Board of Education, who, it is alleged acted illegally and without lawful authority for the reason that they were without jurisdiction to reverse their previous order affirming the County Board of Education of Floyd County. "Injunction will lie, and it is the appropriate remedy to be employed, to prevent the commission of a wrongful act by an officer or agent of this State, even when acting under color of his office but without lawful authority, and beyond the scope of his official power." *Moore v. Robinson,* 206 Ga. 27 (1a) (55 SE2d 711). See also *Irwin v. Crawford,* 210 Ga. 222, 225 (78 SE2d 609), where this court said, "It is likewise clear that if the proposed action of the county board is dealing with a matter over which the board had no jurisdiction and would be illegal or contrary to law, the trial court properly interfered by injunction."

Clearly, this action seeking to enjoin the illegal acts of the members of the State Board, to wit the rendering of a decision which they were without jurisdiction to do, was not subject to general demurrer on the ground that it was a suit against the State.

■ Material to the answer to the question of whether the

State Board had lawful authority to review its previous decision, affirming the local Board's action in dismissing the Superintendent of Schools is whether the decision of the Board was a judicial act rendered by it while acting in a quasi-judicial capacity.

"The performance of judicial acts under authority conferred upon courts is judicial in character, while the performance of judicial acts under authority conferred upon other persons, boards, or tribunals is quasi-judicial. . . The basic distinction between an administrative and a judicial act by officers other than judges is that a quasi-judicial action, contrary to an administrative function, is one in which all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure; and that no one deprived of such rights is bound by the action." *South View Cemetery Assn. v. Bailey,* 199 Ga. 478, 480 (2), 481 (34 SE2d 863). See also *Mayor of Union Point v. Jones,* 88 Ga. App. 848 (3) (78 SE2d 348); *Gill v. Mayor &c. of Brunswick,* 118 Ga. 85 (44 SE 830).

*Code* § 32-910 (as amended by Ga. L. 1961, p. 39), which authorizes the State Board of Education to review on appeal decisions of the County Boards of Education of the State provides that, "the State Board shall provide by regulation for notice to the parties and hearing on the appeal." The action of the State Board in reviewing the decision of the Floyd County Board was quasi-judicial in nature, as it comes clearly within the definition of quasi-judicial as stated in the foregoing cases.

Where as here, the State Board was exercising judicial powers in rendering its original decision affirming the Floyd County Board, the writ of certiorari was a remedy available to Murdock. *Code* §§ 19-101, 19-203; *City of Cedartown v. Pickett,* 193 Ga. 840, 842 (1) (20 SE2d 263). However, he did not avail himself of this remedy during the 30 days allowed for applying for the writ (*Code Ann.* § 19-209); instead both he and the State Board rely upon a decision of the Board rendered more than 30 days after its original decision, which the latter decision purported to reverse.

The question, therefore, is whether under these circumstances

the Board had authority to reconsider and reverse its previous decision and enter an order reversing the action of the Floyd County Board of Education. While there is a difference of opinion among various state courts as to whether an administrative agency exercising functions of a judicial nature has the inherent right to grant a rehearing or otherwise reconsider a previous decision (see 73 ALR2d 941, Ann.), we are of the opinion that in this State, in the absence of specific statutory authority, an administrative board having made a judicial determination, as was done here, has no lawful authority to reverse that decision. This court in discussing the construction of statutes clothing the State Board of Education with power, in *Conley v. Brophy*, 207 Ga. 30, 33 (60 SE2d 122) stated, "We are not unmindful of the modern tendency to clothe boards and bureaus composed of men not trained in the law with judicial functions. This tendency we consider dangerous, and for this reason, the statutes will be strictly construed." There is no Georgia statute that gives the State Board of Education the power to reconsider and change its decisions rendered while acting in a quasi-judicial capacity. Neither *Code Ann.* § 32-1008, which allows appeal to the State Board, nor *Code Ann.* § 32-910 (as amended by Ga. L. 1961, p. 39) contains any express provision for reconsideration by the Board of its decisions, and under a strict construction of the statutes relating to the State Board of Education this power may not be implied. See *Conley v. Brophy*, 207 Ga. 30, supra. As to the position that inferior tribunals acting judicially cannot grant a rehearing and that their jurisdiction terminates with their decision, see 73 ALR2d 939, 946. This court in *Gravitt v. Georgia Cas. Co.*, 158 Ga. 613 (123 SE 897), held that the Georgia Industrial Commission (now the State Board of Workmen's Compensation), being an administrative body, possesses only such jurisdiction, powers, and authority as are conferred upon it by the legislature, or such as arise therefrom by necessary implication to carry out the powers granted, and that in the absence of specific authority to reopen or rehear a case on its merits, in which a decree has been entered, the Board does not have authority to reconsider the case except on a change in condition, which is specifically authorized by statute.

*Code* § 114-709, (Sec. 45 of Ga. L. 1920, pp. 167, 191). To the same effect see: *New Amsterdam Cas. Co. v. McFarley,* 191 Ga. 334 (12 SE2d 355); *Lumbermen's Mut. Cas. Co. v. Cook,* 195 Ga. 397, 400 (24 SE2d 309); *Liberty Mut. Ins. Co. v. Morgan,* 199 Ga. 179 (33 SE2d 336); *Bender v. Anglin,* 207 Ga. 108, 114 (60 SE2d 756).

The General Assembly provided a remedy by writ of certiorari for redress from the act of the State Board in affirming the dismissal of the School Superintendent and made no statutory provision for the State Board to reconsider or reverse the decision from which the writ could issue. Having dealt with the subject matter giving rise to this litigation, we would not conclude that the General Assembly did not deal with it fully, or as intended, or that more was intended than was done. The wisdom of limiting the Board to the exercise of power expressly granted by the General Assembly is apparent when it is realized that otherwise there would be no limitation upon the exercise of the power, no provisions for appropriate procedure, that it could be exercised at any time after the original decision was made, and as many times as the Board wished, and that there would be no end to litigation. See 73 ALR2d 943 and cases cited.

The State Board of Education was without lawful authority to reconsider and reverse its original decision of October 16, 1963, affirming the action of the Floyd County Board in dismissing J. F. Murdock as the Floyd County Superintendent of Schools.

4. Accordingly, for the foregoing reasons, the judgment of the trial court overruling the general demurrer to the petition is correct, and the judgment on the main bill is affirmed.

5. Since the judgment of the court below was affirmed on the main bill, and the effect of the affirmance does not leave the case to be tried again, *Code Ann.* § 6-901, the cross bill is dismissed.

6. The vital and controlling question presented by the bill of exceptions in each of these cases—whether the State Board of Education had lawful authority to reconsider and reverse its decision of September 9, 1963, affirming the action of the Floyd County Board in removing J. F. Murdock from office, having hereinbefore been decided in the case of State Board v. Floyd County Board (Case No. 22379) adversely to the conten-

**764**

tions of the State Board and Murdock, the question of the right of Murdock to be reinstated as Superintendent of Schools has been adjudicated adversely to him.

Thus even though the answers should be favorable to Murdock on the questions raised by his bill of exceptions, the rulings made could not possibly result in any substantial benefit to him; therefore, this court will not pass upon any of the questions raised in his bill of exceptions and the judgment will be affirmed. See *Smith v. Robinson*, 212 Ga. 761 (2) (95 SE2d 798), and cases cited.

*In cases Nos. 22379 and 22380 the judgment on the main bill is affirmed, and the cross bill is dismissed. Judgment in case No. 22361 is affirmed. All the Justices concur, except Duckworth, C. J., and Head, P. J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. In the first place, when eight of the ten members of the State Board voted four to four on the appeal, they neither affirmed nor reversed the County Board, hence the appeal remained until the subsequent action by the full board of ten in voting seven to three to reverse the County Board. *Code* § 102-102 (5); 2 AmJur2d 31, § 198. But if it were conceded that the tie vote was an affirmance of the County Board's ruling, since no one has acted thereon and will be hurt by reconsidering and reversing that decision upon the discovery that some members acted under a misconception of the facts, or that it was due to mistake or fraud, it should have been set aside as was done. It is immaterial that this might be done over a long period since a prerequisite to its being done is always that it must not hurt anyone who has relied upon it. Therefore, since it can hurt no one, why not correct it to do right?

Courts should exercise judicial restraint to the point of recognizing that they are neither empowered nor qualified to operate our public school system. This duty is, by the Constitution, entrusted to the State and local school boards, with the State Board controlling. If the Board makes a mistake and knows it, courts should not compel it to perpetuate that mistake which will injuriously affect the lives of all the school children in the school unit affected. To compel school authorities to thus con-

tinue their mistakes to the irreparable injury of school children is to completely misconceive the humane and noble cause which they are commissioned to serve.

HEAD, Presiding Justice, dissenting. The writer concedes that this dissent can not change the opinion and judgment of the court. In vital areas of the law it may demonstrate the basis of the disagreement, not for the enlightenment of the Judiciary (since it has no effect as a judgment), but to indicate to the legislative branch of government (if it does) areas wherein remedial legislation might properly be considered by the General Assembly.

The record discloses that on July 27, 1963, three members of the Board of Education of Floyd County (the chairman and one other member not participating) purportedly removed Mr. J. F. Murdock, the County School Superintendent, from his office, and Mr. Murdock appealed to the State Board of Education. On September 9, 1963, with only eight of the ten members of the State Board of Education present, Mr. Henry Stewart (a member of the board) made a motion, "That the decision of the Floyd County Board of Education be reversed and that Mr. Murdock be reinstated as Superintendent of the County Schools." There was a second to the motion and on the roll call vote four members of the board voted for the motion and four voted against it. On September 10, 1963, Mr. Murdock filed a written motion with the State Board of Education requesting that they reconsider their action of the day before. On September 18, 1963, Mr. J. B. Johnson (a member of the board) made a statement to the board that since the last meeting of the board was recessed, and after much thought, he planned to make a recommendation at the October meeting of the State board that the action on the Murdock appeal be reconsidered. "The Chairman ruled that such a motion will be in order and Mr. Johnson's motion will be considered." At the October meeting of the State Board of Education, on October 16, 1963, a motion was made by Mr. Johnson, and duly seconded, that the board reconsider the action previously taken on the appeal of J. F. Murdock. This motion was carried. Mr. Henry Stewart made a motion that the appeal of Mr. Murdock be sustained and that

he be reinstated as County School Superintendent of Floyd County. On the roll call vote seven of the ten members voted for the motion made by Mr. Stewart to reinstate Mr. Murdock. Mr. Murdock testified that on October 17, 1963, (the date the present action was filed against him to enjoin him from serving as County School Superintendent) he occupied the office of County School Superintendent and discharged the duties of the office.

1. In Division 1 of the opinion it is held that the petition stated a cause of action for equitable relief, and in support of this contention the case of *Cummings v. Robinson*, 194 Ga. 336, supra, is cited. In the *Cummings* case a member of the county board of commissioners had died, and on a motion to elect Cummings as a member of the board two members of the board voted for the motion and two against it. In the opinion of this court it was said (headnote 1) that where it was shown "that neither the defendant nor any one else had been so elected to fill such vacancy, but that despite this fact the defendant would, unless restrained, present himself as a member of the board and would attempt to act and serve as such member and would thereby interfere with the lawful members in the performance of their official duties, the petition stated a cause of action for injunctive relief, . . ." Immediately preceding the quotation in the majority opinion of the court, the opinion in the *Cummings* case stated: "It can not be held that quo warranto is the exclusive remedy where persons rightfully in office desire protection against intrusion and interference from one having no right or authority in the premises, but who will nevertheless so intrude and interfere, unless restrained by judicial act." Under the record in the present case it is my view that *Cummings v. Robinson*, supra, does not support the ruling in the opinion of the majority but, on the contrary, supports the view and contention of counsel for Mr. Murdock that the court was without authority to enjoin Mr. Murdock from occupying the office of County School Superintendent.

In order for three members of the County Board of Education of Floyd County to remove Mr. Murdock from his office, it must have been conceded that he had been duly and legally

elected County School Superintendent by the board, had qualified, and was acting as such. The action of the State Board of Education on October 16, voting to reinstate Mr. Murdock as County School Superintendent, must be presumed to have reinstated him to the office, since it is a presumption of law in this State that all public officials do their duty. The grant of an injunction restraining Mr. Murdock from occupying the office of County School Superintendent presupposed that the action of the State Board of Education in reinstating him to his office was ultra vires and void.

"Where an officer is in possession of an office, and another person, even though he be a claimant thereto, seeks to interfere by force with such possession, a court of equity, at the instance of the incumbent, will prevent such interference until right to the office has been determined in a proper proceeding." *Patten v. Miller*, 190 Ga. 105 (8 SE2d 776). The rule stated in *Patten v. Miller*, supra, is the rule in this State applicable to a situation where a person has been rightfully elected to an office and is discharging the duties thereof. The majority opinion cites no case, and my search has revealed none, where injunction is held to be the proper remedy to exclude an office holder from his office prior to a valid determination or adjudication that he has been legally removed therefrom.

The case of *Moultrie Milk Shed, Inc. v. City of Cairo*, 206 Ga. 348, supra, is not in point on its facts with the present case and, in my opinion, does not support the ruling in Division 1 of the opinion. The City of Cairo was attempting to enforce penal ordinances of the city, and on the principle that "equity has jurisdiction to protect property rights where employees refuse to serve because of threatened criminal action," this court reversed the judgment of the trial court denying injunctive relief.

Whether or not Mr. Murdock was interfering in the administration of the office of County School Superintendent depends entirely on the contention that he had been properly removed from his office. If by action of the State Board of Education he was County School Superintendent, there could be no interference by him with an office lawfully occupied and held by him. The sole substantial issue made by the petition was the right

and title of Mr. Murdock to the office of County School Superintendent. "Quo warranto affords an adequate remedy for the trial of title to a public office; and where title is the sole issue, all equitable jurisdiction is ousted." *Stanford v. Lynch,* 147 Ga. 518 (1) (94 SE 1001); *Tupper v. Dart,* 104 Ga. 179 (30 SE 624); *Moore v. Dugas,* 166 Ga. 493 (143 SE 591); *Hornady v. Goodman,* 167 Ga. 555 (3) (146 SE 173); *Davis v. Matthews,* 169 Ga. 321 (150 SE 158); *Rogers v. Croft,* 203 Ga. 654 (3) (47 SE2d 739).

2. It is my view that the action against the State Board of Education was an action against the State. The petitioners were seeking to control the discretion of the State Board of Education in determining whether or not Mr. Murdock had been properly removed from his office as County School Superintendent. Furthermore, they were seeking to control the action of the State Board of Education as to the person it could recognize as County School Superintendent of Floyd County, and to control the action of the State in regard to the person who could receive and disburse school funds for and on behalf of Floyd County. It is my opinion that if an action seeking to control the authority and discretion of the State Board of Education is not an action against the State, the State can never validly contend that it is being sued without its consent. *Peters v. Boggs,* 217 Ga. 471 (123 SE2d 258).

3. The General Assembly of this State has never by legislative act imposed any restriction or limitation on the discretion of the State Board of Education in the review of matters appealed to it from county boards of education, nor has the General Assembly given direction as to the manner or time in which the State Board of Education should exercise its appellate jurisdiction. Under the original School Act of 1919 (Ga. L. 1919, p. 288) on appeal to the State Board of Education the judgment of that tribunal was final. *Board of Education of Long County v. Board of Education of Liberty County,* 173 Ga. 203 (159 SE 712). This provision was carried forward under the terms of the Act of 1937 (Ga. L. 1937, pp. 864, 867; *Code Ann.* § 32-414). It was omitted from the amendment of 1961 (Ga. L. 1961, p. 39; *Code Ann. Supp.* § 32-910), but under the 1961 amendment no restric-

tion, condition, or limitation was imposed upon the State Board of Education in the exercise of its appellate jurisdiction.

It is my view, therefore, that it is not proper to analogize the jurisdiction and powers of the State Board of Education to those of the State Board of Workmen's Compensation. This court has pointed out in numerous decisions that when a judgment is rendered by the State Board of Workmen's Compensation, the only right of review remaining in the board is limited by statute to a situation where there has been a change in condition. The powers and jurisdiction of the State Board of Education can not properly be analogized to limitations imposed upon this court by statute, since the General Assembly in its wisdom did not see fit to impose similar limitations on the State Board of Education.

Under the rule of this court in *Cummings v. Robinson*, 194 Ga. 336, supra, rights are neither gained nor lost on the vote of an agency, whether such vote be administrative or quasi-judicial, where the result is a tie vote. It is the general rule in this country that where members of an administrative agency are evenly divided on a question, the result is that no action can be taken thereon by such agency.

The State Board of Education is composed of ten members. On September 9, when the vote was taken and the members were divided four to four, only eight members of the board were present. Whether or not the motion for reconsideration filed by Mr. Murdock on September 10 required further consideration by the State Board of Education, it is my view that reconsideration was required of the board acting on its own motion, with all members present. I think it is significant that at the time of the tie vote only one member of the State Board of Education was fully familiar with the record on the appeal of Mr. Murdock. Subsequently copies of the record were furnished to all members of the State Board of Education, and they had an opportunity to familiarize themselves with the record. Notice of the motion for reconsideration was served on one of the three members of the Floyd County Board of Education whose actions had purportedly resulted in the removal of Mr. Murdock as County School Superintendent, and the County Board of Education was

represented by counsel at the hearing and action by the State Board of Education on October 16.

In 73 ALR2d, cited in the opinion of the majority, it is stated at page 938, quoting from the case of Anchor Cas. Co. v. Bongards Co-op. Creamery Asso., 253 Minn. 101 (91 NW2d 122), as follows: "It is generally recognized that one of the powers proper to an efficient and just administration of the right to adjudicate is the power to reverse adjudications which appear to be erroneous (Federal Rules of Civil Procedure, Rule 60 [b], 28 USCA). This power lasts until jurisdiction is lost by appeal or certiorari or until a reasonable time has run, which would be at least coextensive with the time required by statute for review.

"Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, after due and prompt notice to the interested parties, correct it. We think the better view on this question is set forth in Handlon v. Town of Belleville, 4 NJ 99, 106, 71 A2d 624, 627, 16 ALR2d 1118, which stated: '. . . Barring statutory regulation, the power may be invoked by administrative agencies to serve the ends of essential justice and the policy of the law. But there must be reasonable diligence. The denial to such tribunals of the authority to correct error and injustice and to revise its judgments for good and sufficient cause would run counter to the public interest. The function cannot be denied except by legislative fiat; and there is none such here. . . .' "

In 2 AmJur2d 336, Administrative Law, § 524, the general rule is stated to be: "Regardless of whether a determination is or is not deemed to be quasi-judicial, and even though the court may otherwise take the view denying the existence of power in administrative agencies to reconsider or modify their determinations, the courts hold or recognize that administrative agencies may reconsider and modify their determinations or correct errors on the ground of fraud or imposition, illegality, irregularity in vital matters, mistake, misconception of facts, erroneous conclusion of law, surprise, or inadvertence."

It is my view that where it appeared without contradiction

that only one member of the State Board of Education was fully familiar with the record, this alone would have authorized a reconsideration of the prior vote. The further fact that the board is composed of ten members and only eight were present when the original vote was a tie, in my opinion, placed a duty and responsibility upon the board to reconsider its action with all members present and voting, after notice to the county board and with opportunity to the county board to be heard.

It is suggested in the opinion that to allow reconsideration, there would be no limitation on the power to reconsider, and there would be no end to litigation. The full and complete answer to this is that the right to reconsider by an administrative agency, whether the action of the agency be administrative or quasi-judicial, ends finally and conclusively at the time some right of some party affected thereby has vested or become fixed, and until such time, common sense, reason, and justice demand that no limitation be applied other than the limitation imposed by the conscience and intelligence of competent, able, and efficient State board members.

The opinion of the majority in the present case demonstrates that the General Assembly should more fully fix and define the powers and duties of the State Board of Education in the exercise of its appellate jurisdiction.

For all of the reasons set forth, I dissent from the opinion of the majority and the judgment of the court affirming the judgment of the trial court.