PATTEN *et al. v.* MILLER.

No. 13246.   April 10, 1940.

*A. N. Durden, H. W. Nelson, B. D. Murphy,* and *Copeland & Dukes,* for plaintiffs in error.

*J. P. Knight, James A. Branch, Thomas B. Branch Jr.,* and *Franklin & Eberhardt,* contra.

GRICE, Justice. The record before us presents the following features. Miller, on March 3, 1937, was appointed, commissioned, and confirmed by the Senate as chairman of the State Highway Board for a term of six years, since which time he has been exercising the duties as such. On December 2, 1939, while in the quarters assigned to him in the State highway building, and while in the performance of his duties as such chairman, he was by the defendants Griffin, Camp, and Grimes obstructed and impeded in the performance of his official duties in the manner set forth in detail in the foregoing report of the facts, culminating in the forcible ejection of Miller from the room he had been occupying as an office; and they removed or caused to be removed from the doors to the said room the locks and fastenings. Patten denies

that Miller was on the said date a member of the State Highway Board, and takes the position that Miller had no right to occupy any portion of the State Highway Department building. Miller's petition alleged that Patten was a party to a conspiracy to obstruct petitioner in the performance of his duties as chairman of said board and to force him to abandon the said office. Patten, on the day the restraining order was issued, assumed to act first as chairman under a commission issued to him as such by the Governor, and then as a member of the highway board, and moved into the quarters assigned to the chairman of the highway board. He testified that he had information beforehand that Miller would be removed. Patten was given new keys to the office that Miller had been occupying, and understood that the locks had been changed for the purpose of preventing Miller from regaining access thereto, and from having access to the records.

■ We are called upon to declare the law applicable to the state of facts here presented. As was observed by Judge Benning in *Robinson* v. *Lane,* 19 *Ga.* 337, 393, "There is but one question for a court: What is the law?" It was the statement of Mr. Justice Baldwin, in Ex parte Crane, 5 Peters, 216 (8 L. ed. 92), that "Questions of jurisdiction and powers ought neither to be sought nor avoided." Courts should be careful not to assume a power where none exists, but equally as imperative a duty rests upon them not to shirk a ruling on a matter within their jurisdiction, duly presented for judicial determination, and applicable to the issues arising in the case. Where an officer is in possession of an office, and another person, even though he be a claimant thereto, seeks to interfere by force with such possession, equity will, at the instance of the incumbent, interpose its arm to prevent such interference until the right to the office has been determined in a proper proceeding. The power and duty of courts of equity to interfere by the exercise of their preventive jurisdiction to protect the possession of officers de facto is generally recognized. High on Injunctions, § 1315; Joyce on Injunctions, § 1380; 46 C. J. 1059, § 376; 22 R. C. L. 590, § 311; Mechem on Public Officers, § 994. The principle just stated was recognized and applied by this court in the recent case of *Sutton* v. *Adams,* 180 *Ga.* 48 (178 S. E. 365), where a number of authorities in harmony with the ruling there made were collected. The decision in Arnold *v.* Hilts, 52 Colo. 391 (121 Pac. 753, Ann.

Cas. 1913E, 724), which was cited with approval in the *Sutton* case, supra, endorses the following statement from the Supreme Court of Indiana in Huntington v. Cast, 149 Ind. 259 (48 N. E. 1025): "The welfare and good order of society and government require that those engaged in the discharge of public duties should not be disturbed by claimants whose right to discharge such functions is as yet uncertain. Equity will protect the possession of the incumbents from any unlawful intrusion." While the incumbent holding a commission under appointment, and confirmation by the Senate, has certain rights which a court will respect, the larger view which can not be overlooked is that society itself is vitally interested in the proper discharge of public duties imposed by law on such officer.

One of the contentions of the plaintiff in error is that Miller's removal from the room which he had formerly occupied as a member and chairman of the board was done in pursuance of an executive order purporting to have been issued under the Code, § 91-402, providing that the Governor shall have authority to assign rooms in the Capitol and shall have general supervision over all property of the State, that therefore Miller's removal from the quarters previously occupied by him was lawful, and that Patten's subsequent physical possession thereof was in like manner lawful and could not be affected by any injunctive order. There is no merit in the contention as thus presented to this court, since Miller testified, without dispute, that he had not resigned or otherwise vacated the office, as declared by the Governor, since the judge was authorized to find that such ejection order was bottomed or conditioned upon the theory that such vacancy did exist, rather than amounting to an assignment of rooms or space as among existing officers. In these circumstances, and since the Governor would have no authority to appoint a successor unless a vacancy did exist (see *Patten* v. *Miller,* post, 123, 152), the court was authorized to preserve the original status as by injunction, pending a determination in a proper proceeding whether the office was in fact vacated as declared by the Governor. In Ann. Cas. 1913E, 737, following report of Arnold v. Hilts, supra, it is pointed out that a public office is a franchise, and not a mere tangible combination of rooms, tables, books, and papers, and that loss of the physical possession of such tangible property does not necessarily dispossess the officer

of the intangible franchise entrusted by law to him as a public office; quoting from Sullivan v. Haacke, 7 Ohio Dec. 113. While it appeared on the hearing that at the time the petition for injunction was filed Patten had, by virtue of the ejection of Miller under the above-mentioned order, taken physical possession of the quarters theretofore occupied by Miller, and the books, records, documents, and files of the highway board theretofore in the possession of Miller, such possession was, under what has been said above, a trespass upon the de facto incumbent, and a court of equity might enjoin a continuance thereof. Such an injunction is not in such case subject to the objection that it is mandatory. "While under the Code an injunction which is purely mandatory in its nature can not be granted, the court may grant an order the essential nature of which is to restrain, although in yielding obedience to the restraint the defendant may incidentally be compelled to perform some act." *Goodrich* v. *Georgia Railroad & Banking Co.,* 115 *Ga.* 340 (41 S. E. 659).

■ Counsel for Patten urge that the foregoing rule of law is not applicable to the record before us, because Miller bases his right on the contention that he is chairman of the State Highway Board of Georgia, when in fact there is no such office, and no duties to be performed by the chairman are prescribed by law or disclosed by the record to have been otherwise prescribed. In 1919 the General Assembly passed a measure reorganizing the State Highway Department. Georgia L. 1919, p. 242. In 1921 this act was amended in certain particulars. Ga. L. 1921, pp. 199-203. An act was approved on March 3, 1937, the title to which was as follows: "An act to abolish the State Highway Board of Georgia, and to repeal Code sections 95-1601 and 95-1602 of the Code of Georgia of 1933, said sections having reference to membership, appointment, and terms of the members; and for other purposes." Ga. L. 1937, p. 905. On the same day another act was approved, the title to which is as follows: "An act to create the State Highway Board of Georgia, providing for membership thereof, the appointment and terms of office, to provide that said board shall perform all of the duties heretofore performed by the State Highway Board of Georgia; and for other purposes." Ga. L. 1937, p. 906. In this last act no reference is made to the chairman of the board; nor on the other hand does it purport expressly to repeal

Code § 95-1603, codified from the act of 1921 above referred to, which provides for the office of chairman. Considering together the two acts of 1937, approved on the same day, we conclude that it was the intent of the legislature merely to replace the provisions of § 95-1601 and § 95-1602 of the Code with the provisions of the act of 1937 creating the new State Highway Board. While the caption of the act last referred to embodies the words, "to provide that said board shall perform all the duties heretofore performed by the State Highway Board of Georgia," the body of the act contains no such provision, but merely creates a highway board without defining any powers of the board. It would be dangerous to assume that the General Assembly intended to repeal by implication every provision of the old law with respect to the highway board, and then to create a new highway board without any law defining its duties and powers. Such a result would seem to follow if it be held that the new act of 1937 abolished by implied repeal the former provision of law creating a chairman. We are fortified in the view that it was not so intended by the fact that the same General Assembly passed an act, approved March 19, 1937, creating the Department of Public Safety, and provided that the department shall be composed of certain persons including "the Chairman of the Highway Board." Ga. L. 1937, p. 322. In harmony with our ruling is the fact that the Governor appointed Miller to the office of chairman of the State Highway Board, and issued to him a. commission as such, and that the Senate confirmed his appointment to that office. See Ga. L. Ex. Sess. 1937-1938, p. 528, where it seems to have been recognized that the office of chairman of the board has not been abolished. The very title, chairman of the board, carries with it the idea that the occupant of such office has certain duties, such as presiding at board meetings, etc., which are not shared by the other members. There may be still other duties which need not be here declared; nor is it necessary to decide whether the act of 1922 (Ga. L. 1922, pp. 115-117), as to salary and powers incident to that office, was in either respect repealed by the act of 1925 (Ga. L. 1925, pp. 208-211) or by any other subsequent act, or by the codification of the laws.

■ It is also insisted by counsel for Patten that the law as announced in *Sutton* v. *Adams* is not applicable here, because Patten, and not Miller, was in possession of the office at the time the in-

junction proceedings were instituted. The petition was presented to the judge and he granted a restraining order thereon at one o'clock on the morning of Monday, December 4. On Saturday morning, December 2, Patten went to the office of Miller and advised him that he would be put out of his office if he did not resign, and inquired whether it would be satisfactory to Miller for Patten to be appointed chairman of the State Highway Board. Miller stated that he was not going to vacate the office. Patten thereupon went directly to the office of the Governor, and remained in the City of Atlanta all that day and night. We have set forth in the statement of facts, a resumé of important parts of the testimony bearing on the issue thus raised. The argument of counsel for Patten leads to this: that one may be deprived of the possession of his office by physical force, and may be denied by force the privilege and opportunity to exercise its duties, and that when he is so deprived, and when a rival claimant gets possession of this office in such a manner, equity has no jurisdiction by injunction to aid the ousted officer. So we have this question of law to determine: If an incumbent in office, having possession and performing the duties of it, and seeking to continue in said office and to exercise the functions thereof, is by the use of force and violence deprived of the physical possession and occupancy of the room where the duties of the office are carried on, and of the furniture and records therein, is a court of equity by such conduct divested of jurisdiction to protect by injunction the incumbent, so that the claimant in the manner indicated relegates the incumbent to proceed by quo warranto to recover possession of the office, leaving the claimant in possession until a quo warranto proceeding is finally terminated? The authorities on this question fail to support the affirmative of this contention, but on the contrary refute it.

We agree to the contention that a decision sanctioning such a view would amount to an invitation to persons desiring to contest for an office to resort to violence to obtain and retain physical possession, and thus to shift the burden. The temptation would be for a contender for a public office held by another person claiming the right to continue therein, to muster a force large enough to enable him to seize violently the physical possession of the room and equipment and to hold them by such violent means; and a like temptation would thereby be held out to the ousted occupant to try

to muster a large enough force to regain possession, thus inaugurating an unseemly show of physical force with possible bloodshed. In *Sutton* v. *Adams,* supra, this court, in referring approvingly to the decision in Arnold *v.* Hilts, supra, observed that "it was held even that where an incumbent holding an office under a prima facie legal right has been actually ousted by private physical force, a court of equity may restrain the intruder from interfering with him in the performance of his official duties. In the opinion it was said: The plaintiff 'was inducted into office peacefully and lawfully, and, under the facts as they exist here as between him and the defendant claimant, he should be allowed to vacate peacefully, or be lawfully removed, and, until such time comes, he should be protected by the courts in such possession.' The foregoing principles represent the weight of authority, and so far as they might apply to a case like the present they are in accord with the law of Georgia as stated in the Code, and have been recognized and applied by this court." This principle was clearly stated and recognized in the Colorado case of Arnold *v.* Hilts, supra. That decision quoted approvingly from Braidy *v.* Theritt, 17 Kansas, 468, as follows: "Where an office is in dispute between two persons, and the one in actual possession of the office steps out of the place where the business is usually performed, but with no intention of abandoning the office, or of giving it to the other person, and such other person with full knowledge of the facts steps in and immediately proceeds to do business as though he is in fact the officer; *held,* that as between such two persons, the one previously in possession must be considered as the officer de facto." See also Ekern *v.* McGovern, 154 Wis. 157 (142 N. W. 595, 46 L. R. A. (N. S.) 796); Heyward *v.* Long, 178 S. C. 351 (183 S. E. 145, 114 A. L. R. 1130). If Miller was in possession of official documents to which Patten claimed to be entitled by virtue of his appointment, our Code furnishes Patten with a remedy at law to obtain possession thereof, which is both summary and orderly. §§ 89-604, 89-607.

■ The further contention is presented by able counsel for the plaintiffs in error, that it was error to allow the amendment to the petition, requiring Patten to restore the status as it existed at the time the injunction was granted. This contention must be ruled adversely to him, under the principle announced in *Byne* v. *Byne,* 54 *Ga.* 257; *Baker* v. *Weaver,* 104 *Ga.* 228 (30 S. E. 726); *Murphey* v. *Harker,* 115 *Ga.* 77 (41 S. E. 585).

It is urged by counsel for the plaintiffs in error that the injunctive order of December 16, 1939, as entered by the court, is void for indefiniteness and uncertainty. We recognize the rule that if the decree is injunctive, it ought to apprize the defendant of what it is that he shall abstain from doing. *Nance* v. *Daniel,* 183 *Ga.* 538, 542 (189 S. E. 21). In 32 C. J. 368, § 620, we find the applicable rule stated as follows: "It is impossible to lay down any precise rule of universal application as to the degree of certainty required, further than the rule that the writ of injunction, or restraining order, should be so clear and certain in its terms that defendant may readily know what he is restrained from doing and that he must obey it at his peril." In 1 High on Injunctions (4th ed.), 52, § 37, the rule is stated as follows: "The writ of injunction should contain a description of the particular things or acts concerning which the defendant is enjoined, in order that there may be no opportunity for misapprehension." The order of December 16, 1939, directed that the restraining order of December 4 be continued in force; and the one must therefore be construed in the light of the other. The two orders are set forth in the statement of facts above. We do not think the criticism is well founded. In the nature of things it would be difficult, if not impossible, to specify every possible act of interference, obstruction, and molestation of the petitioner in the discharge of his duties as chairman of the State Highway Board, or to name every record, book, document, and file of the State Highway Board of which he claimed the lawful right, custody, and possession. The injunction was sufficiently definite to inform the plaintiff in error that he was not to interfere with the incumbent's duties or the papers which pertained to his office.

Counsel for Patten urge that the present suit can not be maintained, because it is in reality a suit against the State. We can not sustain this contention. The principle is thoroughly established, that an officer of the State, even where acting under color of his office but beyond the scope of his authority, whether sued to prevent the commission of a wrong or to redress one which has been committed while so acting, can not claim immunity from suit on the ground that the suit is one against the State. *Dennison Manufacturing Co.* v. *Wright,* 156 *Ga.* 789 (120 S. E. 120); *Stanley* v. *Sims,* 185 *Ga.* 518 (195 S. E. 439); Ex parte Young, 209 U. S.

123 (28 Sup. Ct. 441, 52 L. ed. 714) ; Home Telephone Co. *v.* Los Angeles, 227 U. S. 278 (33 Sup. Ct. 312, 57 L. ed. 510) ; Sterling *v.* Constantin, 287 U. S. 378 (53 Sup. Ct. 180, 77 L. ed. 375).

Under the pleadings and the proofs, the judgment of the trial court must be *Affirmed.*   *All the Justices concur.*