MOORE *et al.* *v.* ROBINSON.

No. 16733. October 11, 1949.

*Eugene Cook, Attorney-General, J. R. Parham, Assistant Attorney-General,* and *John Sammons Bell,* for plaintiffs in error.

*Roy B. Rhodenhiser Jr.,* and *Wright & Reddick,* for defendant.

Candler, Justice. (After stating the foregoing facts.) The plaintiffs in error contend that this case is controlled by the ruling made in *Brown* v. *Lawrence,* 204 *Ga.* 788 (51 S. E. 2d, 651), which was decided on January 10, 1949. We do not think so. The facts are different. The *Brown* case, supra, was an action for declaratory relief, and we held that the pleaded facts did not show an actual justiciable controversy ripe for declaratory relief. Mr. Chief Justice Duckworth dissented. The facts differentiating the two cases may be seen from the opinions, and they will not be set out here.

Before dealing with any other questions made by the record, we will first examine the petition to see if it is subject to the assault made upon it by the demurrers. These three questions are raised by the general demurrer, and are insisted upon by the plaintiffs in error: (1) The allegations of the petition are not sufficient to show that any right of the plaintiff, either as a citizen or as a duly licensed and practicing chiropractor, has been violated, so as to authorize a court of equity to grant the relief prayed in an action of this character. (2) The present proceeding is in essence a suit against the State, instituted without its consent, which is not permissible under the law. And (3) the principle upon which the plaintiff bases his right to equitable relief is a disputed question of law, and the general rule is well settled that, when the principles of law upon which the right to injunctive relief rests are disputed, and will admit of doubt, a court of equity will grant no relief until a decision of a court at law is first rendered establishing such principles, although satisfied as to what is a correct conclusion of law on the facts. The petition is demurred to specially upon the ground that it is duplicitous, in that the plaintiff seeks to assert thereby two inconsistent theories, and is seeking by his petition to take advantage of such inconsistent theories of law. And certain

specified allegations of the petition are also specially demurred to upon the ground that they are mere conclusions of the pleader, where the facts upon which they are based are not alleged. These questions, as thus raised by the demurrers, will be disposed of in the order of their statement.

We are of the opinion that the plaintiff had a right to maintain his action for injunctive relief. Prevention of the alleged unlawful practices by the Board of Chiropractic Examiners is essentially injunctive in character, and the relief prayed was the only appropriate remedy available to him. *Atlanta Title & Trust Co.* v. *Tidwell,* 173 *Ga.* 499, 511 (160 S. E. 620, 80 A. L. R. 735). The right to practice chiropractic in this State is, like the right to practice any other profession, a valuable right, which is entitled to protection under the Constitution and laws of this State. *Hughes* v. *State Board of Medical Examiners,* 162 *Ga.* 246 (134 S. E. 42). "Where the question is one of public right, and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that plaintiff is interested in having the laws executed and the duty in question enforced." Code, § 64-104; *Board of Commissioners of Manchester* v. *Montgomery,* 170 *Ga.* 361 (153 S. E. 34); *Thomas* v. *Ragsdale,* 188 *Ga.* 238 (3 S. E. 2d, 567). And we do not think that it would be seriously contended by any one that the members of the Board of Chiropractic Examiners were not under a duty to the public generally, including, of course, the members of that profession, to administer the laws regulating the practice of chiropractic, as they have been enacted by the selfsame authority which created the board itself. The principle is thoroughly established that injunction will lie and is the appropriate remedy to prevent the commission of a wrongful act by an officer or agent of this State, even when acting under color of his office but without lawful authority, and beyond the scope of his official power. 43 C. J. S., § 9; *Atlanta Title & Trust Co.* v. *Tidwell,* supra; *Cannon* v. *Montgomery,* 184 *Ga.* 588 (192 S. E. 206). If this were not the rule, our State examining boards would be free to fix the rules and prescribe the qualifications for the admission of persons who desire to practice our several professions, and there would be nothing the citizen could do to prevent it; and this is true for the reason that mandamus is an

available legal remedy which may be employed only for the purpose of compelling an officer to perform a specific act where his duty to do so is clear and well defined. *Jackson* v. *Cochran,* 134 *Ga.* 396 (67 S. E. 825, 20 Ann. Cas. 219). In the instant case, the petition alleges that the members of the Board of Chiropractic Examiners are performing their official duties in an unlawful manner, and beyond the scope of their authority. For purposes of the demurrer, this is admitted, and applying the principles announced above, we hold that the plaintiff had a right to enjoin such unauthorized practices.

Following the rule announced in *Patten* v. *Miller,* 190 *Ga.* 105 (8 S. E. 2d, 776), there is no merit in the contention that the present suit is in effect one against the State, instituted without its consent, and consequently not maintainable. Mr. Justice Grice, who delivered the opinion for this court in the *Patten* case, supra, in speaking for the court said: "The principle is thoroughly established, that an officer of the State, even where acting under color of his office but beyond the scope of his authority, whether sued to prevent the commission of a wrong or to redress one which has been committed while so acting, cannot claim immunity from suit on the ground that the suit is one against the State." It is well settled by the decisions of this court that a suit may be brought and maintained against officers or an agency of the State, without violating the prohibition against suing the State without its statutory consent, if the sole relief sought is to redress a wrong or an injury that they have committed upon the person or property rights of the complainant, either without right or authority or contrary to the statute under which they purport to act. *Cannon* v. *Montgomery,* supra. It is very clear to us that, if the relief prayed in the present case is granted, it will not operate to control the action of the State or subject it to liability, and this is the test for determining whether or not a suit is in reality one against the State, though not named as a party. *Musgrove* v. *Georgia Railroad & Banking Co.,* 204 *Ga.* 139 (49 S. E. 2d, 26).

Another question raised by the demurrer, and insisted upon in the brief for the plaintiffs in error, is that the plaintiff's right to have the equitable relief prayed is dependent upon a disputed or doubtful question of law, and that equity can grant

no relief in these circumstances until that question is settled in a court of law. There is no merit in this. Whatever may be the rule in other jurisdictions respecting this contention, it may be safely asserted that it does not obtain in Georgia, for the purpose of our Uniform Procedure Act of 1887 (Ga. L. 1887, p. 64) was to vest authority in the superior courts of this State to settle in one suit the controversy between the parties without reference to the question whether the plaintiff's cause of action was legal or equitable, or both, or whether the defendant's defense was one which a court of law will recognize or one which, under the old procedure, would have required the interposition of a court of equity in order to give effect to equitable remedies, ordinary or extraordinary. *McCall* v. *Fry,* 120 *Ga.* 661 (48 S. E. 200); *Delaney* v. *Sheehan,* 138 *Ga.* 510 (75 S. E. 632). In other words, by § 37-901 of the Code it is declared: "The superior courts, on the trial of any civil case, shall give effect to all the rights of the parties, legal or equitable, or both, and apply on such trial remedies or relief, legal or equitable, or both, in favor of either party, such as the nature of the case may allow or require."

The petition is demurred to specially upon the ground of duplicity. It is not subject to this criticism. A petition or declaration is duplicitous when it contains in the same count, for the recovery of a single demand, more than one fact or set of facts, any one of which would justify the recovery. 7 Enc. Pl. & Pr. 237; *Orr* v. *Cooledge,* 117 *Ga.* 195 (43 S. E. 527); *Smith* v. *McWhorter,* 173 *Ga.* 255 (160 S. E. 250). In the present case, the facts alleged state only one theory upon which the plaintiff predicates his right to the relief sought, and there is a prayer that the members of the Board of Chiropractic Examiners, both in their respective official capacity, and individually, be enjoined from doing the act complained of in the petition; and clearly this is not duplicitous pleading. *Allen* v. *Allen,* 196 *Ga.* 736 (27 S. E. 2d, 679).

The remaining grounds of special demurrer attack certain allegations of the petition upon the ground that they are mere conclusions of the pleader. Standing alone and without reference to other facts alleged in the petition, the criticism lodged against them might be well founded, but when they are considered in connection with the petition as a whole, the attack upon them is without merit.

The defendants offered in evidence a number of affidavits in support of their defense. They were objected to by counsel for the plaintiff on the ground that the opposite party had not been previously served with a copy of the same. The trial judge refused to admit them. Copies of the rejected affidavits are attached to and made a part of the bill of exceptions. They have been carefully examined and considered by us, and whether or not their exclusion from evidence was erroneous, as the plaintiffs in error contend, this will not require a reversal of the judgment, because the facts testified to by the affiants would not have authorized an interpretation of the amended act different from that placed upon it by the trial judge.

By section 5 of the original Chiropractic Act of 1921 (Ga. L. 1921, p. 169), no person was eligible to take the chiropractic examination provided for therein, except "a graduate of a chartered chiropractic school or college which teaches only attendance courses and requires a course of study of at least three years of six months each." The act was amended in 1939 (Ga. L. 1939, p. 252) by striking from section 5 these words, "course of three years of six months each," and substituting in lieu thereof the following words, "Four-year standard college course." Consequently, as to educational requirements, the statute now reads: "Each applicant shall be of good moral character and shall be a graduate of a chartered chiropractic school or college which teaches only attendance courses and requires a four-year standard college course." Code (Ann. Supp.), § 84-507. Just what the legislature intended for the substituted words to mean when written into the original chiropractic act is, after all, the main question involved in this litigation. The plaintiff contends that the words, "A four-year standard college course," mean a four-year course of nine months each, and the defendants insist that they mean a four-year course of six months each. Undoubtedly, the act as amended is ambiguous, and being so, it was necessary for the judge in the present case, in order to grant any of the relief prayed, to construe it and by his interpretation give it the meaning which the legislature intended for it to have. After a rather lengthy hearing, he held that it meant that only those graduates of a chartered chiropractic school or college, which teaches only

attendance courses and requires a four-year course of nine months each, are eligible to take the examination and be licensed to practice the chiropractic profession in this State. Concededly, by the amendment the legislature intended to, and did, increase the educational requirements for membership in this profession, and we think it may be safely stated that, if the legislature had written into the act itself that which appears in its title or caption, this litigation, in all probability, would never have arisen. It is always the duty of a court, in construing a statute, to ascertain and give full effect to the legislative intent, and this case turns upon what the legislature intended for the words, "standard college course," to mean. To accomplish this end, the sources of enlightenment are not limited; interpretation is a matter addressed solely to the intelligence, information, and learning of the judge, and he is not restricted as to the means by which he may enlarge these faculties. *Georgia, Fla. &c. Ry. Co.* v. *Sasser,* 4 *Ga. App.* 285 (61 S. E. 505). The defendants earnestly insist that the trial judge has erroneously construed the act in question and placed the wrong interpretation upon its meaning. We do not think so. The title or caption of the act—which, while no part thereof, may always be examined by the court when the act is doubtful, for the purpose of finding the legislative intent thereof (*Thomas* v. *Board of Commissioners of Chattooga County,* 196 *Ga.* 10, 25 S. E. 2d, 647)—expressly states that the purpose of the act is to provide for a four-year college course of nine months each as a requirement for taking the examination to practice the profession of chiropractic; and as we understand the rules to be followed in construing a doubtful statute, there is no better source to which a court may go for the purpose of finding the legislature's meaning of an act passed by it. The words, "standard college course," were employed and used by the legislature in the amending act for the purpose of prescribing its educational requirements for taking the examination to practice chiropractic, after this court had said in *Smith* v. *Board of Education of Washington County,* 153 *Ga.* 758 (5) (113 S. E. 147), that "The term, 'scholastic year,' is one of common use, and is generally understood to mean a term of about nine months"; and it is judicially known that the colleges of this State when this act was passed in 1939 had

regular terms of about nine months, usually running from early in September until the latter part of the following May. And on the hearing of this case, the plaintiff, in an effort to be helpful to the trial judge in properly construing the act, brought up witnesses, holding high positions in the field of chiropractic education, who testified to facts which we think clearly show that a standard college course in chiropractic education means a course, given by a college teaching that science, for a regular scholastic year of nine months; and in the circumstances of this case, it is not unreasonable to presume that the legislature had these facts before it when the amending act was passed. Finally, and with propriety we think, it may be said that the meaning which the trial judge gave to the act by his construction of it is the same interpretation which the Board of Chiropractic Examiners had placed upon it until very recently.

Headnotes 7 and 8 do not require elaboration.

*Judgment affirmed in part with direction, and reversed in part. All of the Justices concur.*