23785. UNDERCOFLER, Commissioner v. SEABOARD AIR LINE RAILROAD COMPANY et al.

23786. DEKALB COUNTY v. SEABOARD AIR LINE RAILROAD COMPANY et al.

23787. GEORGIA MUNICIPAL ASSOCIATION v. SEABOARD AIR LINE RAILROAD COMPANY et al.

ARGUED NOVEMBER 15, 1966—DECIDED DECEMBER 5, 1966—
REHEARING DENIED DECEMBER 15, 1966.

*Arthur K. Bolton,* Attorney General, *William L. Harper, H. Perry Michael,* Assistant Attorneys General, for Undercofler.

*Troutman, Sams, Schroder & Lockerman, Robert S. Sams, Allen E. Lockerman, Milton A. Carlton, Jr., Robert E. Northup,* for Seaboard.

*George P. Dillard, Herbert O. Edwards, Robert E. Mozley,* for DeKalb County.

*James T. McIntyre, Jr.,* for Ga. Municipal Association.

*Harold Sheats, J. C. Murphy,* for Fulton County.

GRICE, Justice. A railroad company's claim of discriminatory and disproportionate assessment of its property for ad valorem taxes brought about these appeals.

The litigation began when Seaboard Air Line Railroad Company filed its petition in the Superior Court of Fulton County on July 12, 1966, against Hiram K. Undercofler, State Revenue Commissioner, making this claim as to his assessment of its property for taxes for the year 1966. The commissioner answered denying that the assessment was illegal. He also interposed a general and a special demurrer to the petition, both of which were overruled.

Following an interlocutory hearing the trial court, on August 4, 1966, entered a decree which enjoined the commissioner, pending a final disposition, from assessing the railroad's property for county and municipal ad valorem tax purposes at a percentage of fair market value greater than that employed in such counties and municipalities for the assessment of the properties of other taxpayers. The decree also ordered the commissioner to obtain from the best information available the percentage of fair market value used in the assessment of properties of other taxpayers within such local taxing jurisdictions and to make a new assessment of the railroad's property based thereon.

In his appeal, case number 23785 in this court, the commissioner enumerates as error the overruling of his general demurrer and the entering of the decree as aforesaid. An intervenor, the Georgia Municipal Association, in case number 23787, appealed from such decree insofar as it restricted the proceedings to the

issue of proper assessment percentage and refused to consider the fair market value of the railroad's property. It also complained of a prior order which overruled the commissioner's demurrers to the petition. Another intervenor, DeKalb County, in case number 23786, appealed from the decree insofar as it restricted the proceedings to the issue of proper assessment and also enumerated as error the exclusion of two affidavits.

The amended petition of the railroad, insofar as essential here, made the allegations which follow.

The railroad is in the class of taxpayers required by *Code Ann.* § 92-5902 to make its returns for local and state ad valorem tax purposes to the commissioner, instead of to local tax assessing authorities. The commissioner is charged by *Code* § 92-6001 with the duty of scrutinizing all such returns made to him and assessing the property for local and state ad valorem taxes. Upon making an assessment of such property the commissioner certifies to each local taxing entity its appropriate portion of the total assessment.

The commissioner on May 10, 1966, presented the railroad with an assessment of its tangible property for ad valorem tax purposes for 1966. This assessment fixed the fair market value of such property located in Georgia at $55,000,000, which the railroad does not dispute and expressly accepts. However, such assessment fixed the value of its property for ad valorem tax purposes, against which the local millage rates will apply, at $18,700,000, which is 34% of the fair market value of $55,000,000.

The railroad owns tangible property in 49 counties in Georgia. The tax officials of those counties, who have no authority to assess the railroad's property, assess the tangible properties of other taxpayers within their respective counties at varying percentages of fair market value, ranging from 9.25% to 41.33%, as shown by an exhibit to the petition. This exhibit also lists the appropriate portion of the $55,000,000 fair market value located in each such county.

Applying the assessment percentage actually used by each such county to its proper portion of the $55,000,000 fair market value, the assessment of the railroad's property should total $13,692,342, instead of the $18,700,000 fixed by the commis-

sioner. The commissioner's assessment of the railroad's property is 36.6% higher than it would be if such property were assessed on the basis of value used for other taxpayers. This assessment of $18,700,000 by the commissioner is on a different standard from and on a greater basis of value than that used in the taxation of the properties of other taxpayers, and requires the railroad to bear a disproportionate share of the 1966 ad valorem tax burden in the counties in which it owns property.

This assessment of the railroad's property at $18,700,000, while the properties of other taxpayers in said counties are being assessed on a basis of value which would produce an assessment of the railroad's property at $13,692,342, violates the following provisions of the Georgia Constitution: that authorizing the General Assembly to provide for a different method of assessments for public utilities, "but not at a greater basis of value . . . than other properties" (Art. VII, Sec. II, Par. IV; *Code Ann.* § 2-5504); that declaring "All taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax" (Art. VII, Sec. I, Par. III; *Code Ann.* § 2-5403); and that guaranteeing "Protection to person and property . . . shall be impartial and complete." Art. I, Sec. I, Par. II (*Code Ann.* § 2-102). Such assessment also violates the equal protection clause of the United States Constitution. Art. XIV, Sec. I (*Code* § 1-815). Also, if enumerated statutes which fix the powers and duties of the commissioner relating to the county ad valorem taxation of the railroad's property, or any one or more of them, be construed and applied to require or authorize such assessment of $18,700,000, while properties of other taxpayers in said counties are being assessed on a basis of value which would produce an assessment of the railroad's property of $13,692,342, then each statute so construed and applied is violative of the constitutional provisions aforementioned.

In order to have the commissioner's assessment of its property adjusted to a nondiscriminatory and uniform level by a means other than a court of equity, the railroad, on May 27, 1966, invoked arbitration, under designated statutes of this state, but, because of an opinion by the Attorney General of Georgia to

the effect that the arbitrators had no authority to determine the issue of assessment percentage, the attempted arbitration ended.

The only other remedy at law available to the railroad as to this assessment is to allow the commissioner to certify his assessed values to the various 49 counties, allow them to issue executions on their levies, and then file and pursue 49 different affidavits of illegality, with the resulting multiplicity of actions. Aside from such resulting multiplicity, the remedy of affidavit of illegality would not be adequate since the county taxing officials have no authority to assess the railroad's property, it being reserved to the commissioner. Hence, even if the affidavits of illegality were sustained, the counties would have no power to make proper assessments, but would have to turn back to the commissioner, now before the court, for a valid assessment. Therefore, the railroad has no adequate remedy at law.

While all of its property involved here is located in some county within the state, only a portion thereof is located within municipalities. As a result, the proper assessment of the total property must be arrived at, and its identification with a given county made, before any proportional division of assessment can be made among the various municipalities. Therefore, the railroad is entitled to relief from the commissioner's certificate of assessed values to the municipalities, as well as to the counties.

Unless the commissioner is temporarily restrained from certifying his assessment of the railroad's property to the various counties and municipalities, this action will become moot.

The prayers of the petition, besides the temporary restraining order above referred to and general relief, included temporary and permanent enjoining of the commissioner from certifying his assessment of the railroad's property to the various counties and municipalities and from certifying to them any assessment "which is non-uniform with and discriminatory in terms of the basis of value utilized in the assessment" of other taxpayers' property located in said counties and municipalities.

We now consider the attacks made upon the petition by the commissioner.

■ It is urged that this is a suit against the State for which no consent has been granted, and is therefore subject to general

demurrer. This assertion is not meritorious. The railroad's claim is that the commissioner is acting beyond his authority and contrary to certain provisions of the State and Federal Constitutions. Hence, this is not a suit against the State. See *Dennison Mfg. Co. v. Wright,* 156 Ga. 789 (120 SE 120); *Cannon v. Montgomery,* 184 Ga. 588 (192 SE 206); *Patten v. Miller,* 190 Ga. 105 (8 SE2d 776); *Moore v. Robinson,* 206 Ga. 27 (55 SE2d 711); *Undercofler v. Eastern Air Lines, Inc.,* 221 Ga. 824 (147 SE2d 436).

■ Nor is the petition subject to general demurrer because it does not name as defendants the various counties and municipalities in which the railroad's property is located. We cannot agree with the contention that they should be made parties because they are interested in the outcome of this action, in that most of them will sustain a loss in tax revenue if the railroad's contentions as to assessment are upheld. The railroad is not attempting to change the assessment percentages set and used by the various counties and cities. On the contrary, it seeks to have those very same percentages applied to it.

The railroad's controversy is with the commissioner alone, as our law places the duty of assessing railroad property upon him only. The counties and cities have no assessing function whatever as to railroad property. They merely seek to collect the assessment as determined and certified to them by the commissioner.

Furthermore, no county other than Fulton and no municipality outside of Fulton could have been joined. No relief whatsoever was sought against any county or municipality, and therefore no common relief was sought against the resident commissioner and such political subdivisions so that the indispensable prerequisite for joining nonresidents in equity suits is lacking. See *I. Perlis & Sons v. National Surety Corp.,* 218 Ga. 667 (129 SE2d 915).

Also, the trial court was liberal in allowing interventions in the action, Fulton and DeKalb Counties and the Georgia Municipal Association having been allowed to intervene.

■ The petition is not fatally defective upon the ground that the railroad has an adequate remedy at law by filing affidavits

of illegality pursuant to *Code* § 92-2706. In the situation now before us, if that remedy were employed it would no doubt result in illegality proceedings being litigated in each of the counties and municipalities in which the railroad owns property, thus causing a multiplicity of suits. Furthermore, such procedure would not provide a full and complete remedy since the very nature of the matter here requires that one court assume jurisdiction to make a ruling providing for proper assessment of all of the railroad's property. Only equity can afford such relief.

■ The petition, as we view it, pleads a clear case of illegal assessment of the railroad's property. The assessment of such property at $18,700,000, while the properties of other taxpayers in said counties are being assessed on a basis of value which would produce an assessment of the railroad's property at $13,692,342, is discriminatory and disproportionate. This violates the constitutional inhibition against assessing public utilities at a greater basis of value than other property, as well as the other constitutional provisions referred to above. See in this connection, the second case of *McLennan v. Undercofler,* 222 Ga. 302 (149 SE2d 705).

■ The decree was not erroneous.

It was authorized by the evidence, which substantially established the facts alleged in the petition. In addition, it was shown that on August 31, 1965, in the first case of *Undercofler v. McLennan* (appeal dismissed, 221 Ga. 613, 146 SE2d 635), the Superior Court of Fulton County ordered the commissioner to perform the duty imposed upon him by *Code* § 92-7002 to bring about as far as practicable an equalization of values throughout the counties of the state. Also, the evidence showed that pursuant to this court order the commissioner, in early 1966, directed each of the county tax officials to assess on a uniform basis at 40% of value, but that the General Assembly thereafter in 1966 enacted legislation which deferred until 1967 the commissioner's duty as to county by county equalization. Ga. L. 1966, p. 45. However, he assessed this railroad's property at 34% of fair market value, an increase from 25% in 1965.

Under the evidence submitted, the decree was required by virtue of the mandates of the State and Federal Constitutions.

The decree, as we construe it, does not require more than one assessment by the commissioner. Compliance with the decree will not be contrary to *Code* § 92-6001, which imposes the duty, if necessary, upon him to correct returns and assess values.

Furthermore, the decree does not violate uniformity and equal protection by discriminating against taxpayers in those counties and municipalities where assessments are higher, as to the quarter-mill tax authorized by our State Constitution. Art. VII, Sec. I, Par. II; *Code Ann.* § 2-5402 (3). This decree did not bring about lack of uniformity and unequal assessment, because that situation already existed. The quarter-mill state tax will continue to be levied upon assessments made by local tax officials insofar as other taxpayers are concerned. The railroad is entitled to the same basis of assessment.

We turn now to the appeals made by two of the three intervenors. One, Fulton County, did not appeal.

■ The Georgia Municipal Association enumerates as error the overruling of the commissioner's general and special demurrers as they related to nonjoinder as parties of municipalities in which the railroad owns property. Even assuming that this intervenor has standing to complain of this, the ruling made in Division 2, as to the commissioner's general demurrer, controls adversely to this contention.

■ Both that association and DeKalb County enumerate as error the ruling, embodied in the decree, that no issue other than the assessment percentage is involved in this case, thus excluding any issue as to value of the railroad's property. Such value was not an issue between the railroad and the commissioner, their pleadings being in agreement as to it. In view of this, these intervenors are bound by the fundamental rule that an intervenor takes the case as he finds it and cannot inject new issues.

This litigation comes at a difficult time, during a period when efforts are being made to bring about, insofar as practicable, an equalization throughout the state of the values of the various classes of property subject to taxation in accordance with the uniformity provision of our state Constitution. *Code Ann.* § 2-5403, supra. See Ga. L. 1962, p. 447; Ga. L. 1963, p. 419.

The claim of lack of uniformity here is made during a time when legislation (Ga. L. 1966, p. 45, supra), which has the effect of postponing a judicial decree (entered in the first case of *Undercofler v. McLennan,* 221 Ga. 613, supra), prevents efforts to obtain uniformity among the various counties. In this situation the commissioner's hands are tied. Yet, this affords no reason to deny this taxpayer's constitutional rights.

In apparent realization of this predicament, the trial court, in its interlocutory decree, has retained jurisdiction to give whatever direction the exigencies of this litigation may require. We find no error in the rulings complained of.

*Judgments affirmed. All the Justices concur.*