43127.  IRWIN v. ARRENDALE.

EBERHARDT, Judge.  H. A. Irwin, a prisoner confined at the State Prison at Reidsville, brought suit in propria persona against Dr. J. J. Arrendale, the medical director of the prison, seeking to recover damages for assault and battery and for injuries allegedly received when he was x-rayed without his consent.  Defendant demurred generally to the petition, contending that the suit was one against the State without its consent and that no negligence was alleged against Dr. Arrendale proximately causing the injuries complained of.  From the sustaining of the general demurrer and the dismissal of the petition plaintiff appeals.  *Held:*

1. In filing his defensive pleadings within the time prescribed by law, the defendant does not waive his right to assert that the petition sets forth no cause of action against him by filing his answer to the merits prior to filing his general demurrer. See *Code Ann.* §§ 81-301, 81-302; *Rountree v. Finch,* 120 Ga. 743 (48 SE 132); *O'Connor v. Brucker,* 117 Ga. 451 (43 SE 731); *Code* §§ 110-702, 110-704.  Compare CPA § 12 (h) (2) (*Code Ann.* § 81A-112 (h) (2)).

2. Any suit against an officer or agent of the State, in his official capacity, in which a judgment can be rendered controlling the action or property of the State in a manner

not prescribed by statute, is a suit against the State and cannot be maintained without its consent. *Roberts v. Barwick*, 187 Ga. 691 (2) (1 SE2d 713). However, "[a] suit against a State officer or agent as an individual is not one against the State. Consequently, where State officers or agents are sued personally, the suit is generally maintainable, whether it be at law or in equity, and whether it be to recover property wrongfully withheld from the true owner, or to recover damages for a breach of contract or in tort for an injury to person or property. . . This is true even though the State officers or agents, when thus sued personally, may seek to claim immunity from suit or an absence of liability because of alleged ownership by the State of the property involved, or because they may claim a performance of the questioned acts as officials acting under legal authority." *Florida State Hospital v. Durham Iron Co.*, 194 Ga. 350, 353 (21 SE2d 216). For cases where suits have been held maintainable against various public officers and employees over the contention that the suit was in reality one against the State without her consent, see *Dennison Mfg. Co. v. Wright*, 156 Ga. 789 (120 SE 120) (suit attacking a license or occupation tax Act and seeking to recover from the Comptroller General, as damages, taxes paid under protest); *Holcombe v. Ga. Milk Producers Confed.*, 188 Ga. 358 (3 SE2d 705), and *Fleisher v. Duncan*, 195 Ga. 309 (24 SE2d 15) (injunction suits against members of the Milk Control Board attacking the Milk Control Act); *Cannon v. Montgomery*, 184 Ga. 588 (192 SE 206) (suit against employee of the State Department of Game and Fish to enjoin him from interfering with property claimed by both plaintiff and the department); *Irwin v. Crawford*, 210 Ga. 222 (78 SE2d 609) (suit to enjoin members of a county board of education and school superintendent from consolidating high school grades of two schools); *Ga. Pub. Serv. Commn. v. Atlanta Gas Light Co.*, 205 Ga. 863 (55 SE2d 618) (suit by public utility to enjoin the Public Service Commission and its members from enforcing commission orders); *Patten v. Miller*, 190 Ga. 105 (6) (8 SE2d 776) (suit to enjoin claimant to office from interfering with another claimant to office); *Stanley v. Sims*, 185 Ga. 518 (195 SE 439) (mandamus to compel chairman and secretary of the Department of Industrial Relations to pay the director his salary); *Undercofler v. Eastern Air Lines, Inc.*, 221 Ga. 824 (147 SE2d 436) (suit

against "Hiram K. Undercofler, who is State Revenue Commissioner . . . and E. J. Olmstead, who is Director of the Sales and Use Tax Unit" seeking injunctive and declaratory relief against sales and use tax assessments) ; *Undercofler v. Seaboard A. L. R. Co.,* 222 Ga. 822 (1) (152 SE2d 878) (injunction suit against Hiram K. Undercofler, State Revenue Commissioner, claiming discrimination and disproportionate assessment of its property for ad valorem taxes) ; *Moore v. Robinson,* 206 Ga. 27 (2) (55 SE2d 711) (suit to enjoin members of Georgia Board of Chiropractic Examiners, officially and individually, from issuing licenses to unqualified applicants) ; *Murdock v. Perkins,* 219 Ga. 756 (135 SE2d 869) (suit against members of the State Board of Education, officially and individually, attacking a decision and order of the board).

3. A jailer or other officer owes to a prisoner in his care the duty to exercise ordinary diligence to keep him safe and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him; and where the officer is negligent in the care and custody of his prisoner or fails in the performance of his duty to him, and as a result the prisoner is injured or meets his death, the officer is personally liable. *Kendrick v. Adamson,* 51 Ga. App. 402 (180 SE 647) ; *Thomas v. Williams,* 105 Ga. App. 321 (124 SE2d 409). And see Constitution, Art. I, Sec. I, Par. IX (*Code Ann.* § 2-109), prohibiting the abuse of any person while he is being arrested, or while he is under arrest, or in prison; *Code* § 77-104, providing that no jailer shall be guilty of wilful inhumanity to or oppression of any prisoner under his care and custody; *Code Ann.* § 77-307 (b), providing that the State Board of Corrections shall adopt rules governing, inter alia, the treatment and hospitalization of prisoners; *Code Ann.* § 77-308, providing that rules and regulations adopted by the State Board of Corrections "shall be reasonable"; *Code Ann.* § 77-309, declaring that it shall be the responsibility of the governmental unit, subdivision or agency having the physical custody of a prisoner to furnish him with food, clothing and medical and hospital attention; *Code Ann.* § 77-316 (c), providing that the bonds required of chief custodial officers of penal institutions and other officials, employees and agents of the State Board of Corrections shall be liable for breach of condition by deputies, agents, or subordi-

nates of the officer and are governed by *Code Ch.* 89-4, which provides, inter alia, that such bonds are obligatory on the principal and sureties "for the use and benefit of every person who is injured, either by any wrongful act committed under color of his office or by his failure to perform, or by the improper or neglectful performance of those duties imposed by law" (*Code* § 89-418 (4)), that "smart money" may be awarded where the officer has not acted in good faith (*Code* § 89-421), and that the officer himself is still liable when the penalty is exhausted or where he has not given bond '(*Code* § 89-423); *Chadwick v. Stewart,* 94 Ga. App. 329 (94 SE2d 502), holding that a deputy sheriff, while transporting a prisoner, owes the prisoner the duty to exercise ordinary care while driving the vehicle in which the prisoner is required to ride; *Dade Coal Co. v. Haslett,* 83 Ga. 549 (10 SE 435), holding that a felon may maintain an action for personal injuries suffered while in confinement as the result of the negligence of the company to which he was leased; *Chattahoochee Brick Co. v. Braswell,* 92 Ga. 631 (18 SE 1015), holding that a convict may recover, from a corporation to which he was leased, for personal injuries received when a guard employed by the corporation ordered him to go into a place where explosives were being used; *Smith v. City of Rome,* 16 Ga. App. 96 (84 SE 734), reversing a judgment of nonsuit in a damage suit by a prisoner in the chain gang who was injured when compelled to hold a defective rock drill while two inexperienced fellow convicts struck upon it with hammers; *Powell v. Fidelity &c. Co.,* 45 Ga. App. 88 (163 SE 239), holding that under Art. I, Sec. I, Par. IX of the Constitution (*Code Ann.* § 2-109), it is the duty of an officer holding a person in his custody to refrain from unlawfully assaulting or killing him; Cohen v. United States, 252 FSupp. 679, 687 (N. D. Ga.), holding that "[a]s the Federal Tort Claims Act results in liability 'if a private person would be liable to the claimant,' it appears that the standard of care due a prisoner under either the federal statute [fixing the duty of care owed by the Bureau of Prisons] or the [Georgia] rule is the same, namely, to exercise ordinary care for the prisoner's protection and to keep him safe and free from harm . . . ," and pointing out that "[i]n Georgia, while the state retains immunity in such cases, the individual jailors may be personally liable, as well as their

bondsmen." See also *Westbrook v. State*, 133 Ga. 578, 583 (66 SE 788, 26 LRA (NS) 591, 18 AC 295), holding that "[i]f the warden, or other officer, inflicts corporal punishment under circumstances which the law does not recognize as sufficient to justify, he invades the convict's right of personal security, and does so at his own peril."

4. "Under proper factual conditions and circumstances, actions against medical practitioners based on assault and battery for acts arising out of their professional conduct are recognized in Georgia. The relation of physician and patient is a consensual one, and a physician who undertakes to treat another without express or implied consent of the patient is guilty of at least a technical battery. An unauthorized and unprivileged contact by a doctor with his patient in examination, treatment or surgery would amount to a battery. In the interest of one's right of inviolability of one's person, any unlawful touching is a physical injury to the person and is actionable." *Mims v. Boland*, 110 Ga. App. 477 (1a) (138 SE2d 902).

5. " 'The preservation of the public health is one of the duties devolving upon the State as a sovereign power. In fact, among all of the objects sought to be secured by governmental laws, none is more important than the preservation of the public health; and an imperative obligation rests upon the State, through its proper instrumentalities or agencies, to take all necessary steps to promote this object. The enactment and enforcement of health measures find ample support in the police power which is inherent in the State and which the latter cannot surrender.' [Citation omitted]. 'Health regulations are of the utmost consequence to the general welfare; and if they are reasonable, impartial, and not against the general policy of the State, they must be submitted to by individuals for the good of the public, irrespective of pecuniary loss. This is so whether the regulations are made by the legislature or by an agency delegated by it to act. Such regulations will be sustained, if upon a reasonable construction there appears to be some substantial reason why they will promote the public health and if they are reasonably adapted to or tend to accomplish the result sought.' " *Abel v. State*, 64 Ga. App. 448, 452-453 (13 SE2d 507), quoting from 25 AmJur 287, 299, Health, §§ 3, 21. As a general rule the state may, for the purpose of the protec-

tion of the public health, resort to the compulsory physical examination, in a reasonable and proper manner, of persons suspected of being infected with a contagious or communicable disease. Annot., "Requiring Submission to Physical Examination or Test as Violation of Constitutional Rights," 164 ALR 967, 984 III b, supplemented 25 ALR2d 1407, 1408, 1415, § 6; 25 AmJur (Supp., p. 75), Health, §§ 28, 32. Thus it has been held that students registering at a state university may be required to submit to a chest x-ray for tubercular infection over claims of violation of constitutional rights. State ex rel. Holcomb v. Armstrong, 39 Wash. 2d 860 (239 P2d 545).

6. Health officers are personally liable if, in enforcing health measures, they do their work negligently, thereby causing unnecessary damage, or if they act unreasonably, arbitrarily, maliciously, or in excess of their authority. 25 AmJur 297, Health, § 17; 39 CJS 864, Health, § 41.

7. A cause of action against a physician for the negligence of an attendant or assistant is set forth where it is alleged by a patient that the attendant was incompetent; that the physician knew of the incompetency and did not use proper care in selecting the attendant; and that the attendant was incompetent, negligent, and unskillful in administering a hypodermic injection in a course of treatment prescribed by the physician to be carried out by the attendant, as a result of which the patient was injured. *Mullins v. DuVall*, 25 Ga. App. 690 (104 SE 513). This holding is an application of a general rule of tort law which finds expression in Restatement 2d, Torts 2d 314, § 390 (liability for one who supplies a chattel for use by person known to be incompetent), which is itself a special application of the rule set forth in § 308 of the Restatement (permitting improper persons to use things or engage in activities under the control of the defendant). However, in order to set forth a cause of action under this theory of liability, it is necessary that the injury complained of have been proximately caused by the injurious conduct of the incompetent, resulting from his incompetency, known to the defendant. See *McKinney v. Burke*, 108 Ga. App. 501, 504 (2) (133 SE2d 383) and cases cited in *Willis v. Hill*, 116 Ga. App. 847, ftn. 5.

8. Similarly, failure to warn or prevention of discovery of the incompetency can not be actionable under this theory

where there is no injurious conduct of the incompetent resulting from his incompetency.

9. The "informed consent rule," if effective in this state and relevant to this case, applies only to the duty to warn of the hazards of a correct and proper procedure of diagnosis or treatment, and has no relation to the failure to inform of the hazard of an improper procedure. *Mull v. Emory University*, 114 Ga. App. 63 (5) (150 SE2d 276).

10. A breach of duty to the state does not necessarily involve a breach of duty to an individual, and the absence of a license to practice medicine or surgery will not of itself authorize an inference of negligence where one attempts to treat or operate upon another and injures him. *Andrews v. Lofton*, 80 Ga. App. 723 (1) (57 SE2d 338). Accordingly, while the standard of care for the practice of medicine and surgery set forth in *Code* § 84-924 is applicable to a person administering x-ray treatments (*Kuttner v. Swanson*, 59 Ga. App. 818, 819 (2 SE2d 230); *Mason v. Hall*, 72 Ga. App. 867, 874 (35 SE2d 478)), the fact that persons operating an x-ray machine are not licensed roentgenologists does not raise an inference that they were negligent in the operation of the machine.

11. Summarizing pertinent parts of the petition in this case, it is alleged that the defendant, a medical doctor and the medical director of the State Prison at Reidsville, was in charge of the medical care of convicts and the medical facility at the prison, including x-ray procedures. Under the principles set forth above, this suit by a convict allegedly injured when he was forcibly x-rayed without his consent, seeking to subject the medical director of the prison solely and personally to liability for damages for the personal injuries allegedly suffered by the convict as the result of the defendant's various alleged wilful and capricious acts and acts of negligence and medical malpractice, cannot be construed as a suit against the state without its consent and is maintainable against the defendant personally.

12. The petition further alleges that on the date in question, "men were herded in line like cattle into said ray filled room, and made to stand in line while said [x-ray] machine was in operation, among them your long suffering complainant." It is further alleged that the x-ray taken of plaintiff was certified by defendant as "negative." Construing the petition

against the pleader, as must be done on general demurrer, the conclusion must be drawn that prisoners were being required to submit to an x-ray examination for the purpose of ascertaining whether any of the prisoners were afflicted with one or more specific diseases. It may be that the disease for which the examination was made was communicable, contagious or infectious. If so, authority for the examination procedure could be found in the police power of the state which could be legitimately exercised to require plaintiff to submit to examination for the good of other prisoners as well as himself. See *Code Ann.* § 77-310 (e), providing for the disposition of tubercular prisoners. Another factor bearing on the authority of the state to employ such procedures in the prison is that prison employees might be subjected to suit by prisoners contracting diseases for failure to isolate other prisoners who were known or should have been known to be afflicted with contagious diseases. See Hunt v. Rowton, 143 Okla. 181 (288 P 342). There is nothing in the petition, however, to justify an inference that the examination was prescribed for the purpose of discovering communicable diseases; on the contrary the petition alleges, in substance, that not only was plaintiff forcibly x-rayed without his consent, but that there was no sound reason for requiring him to submit to an x-ray and that the taking of it was wholly capricious and done solely and only because defendant had power over plaintiff and wanted to take advantage of him. These allegations are sufficient to overcome any presumption of lawfulness of the x-ray procedure and to make an issue as to whether there was any substantial reason and any proper cause why the particular x-ray examination directed to be taken of plaintiff by defendant was necessary to promote the health of the prison population, and whether the examination was reasonably adapted to accomplish the result sought without unnecessary and unreasonable interference with plaintiff's right of personal security. Hence a cause of action is alleged, under the principles set out in the preceding headnotes, for a technical assault and battery by the alleged laying on of the hands and radiation penetration prescribed by defendant, and it was error to sustain the general demurrer.

13. Should it appear on further proceedings, however, that the x-raying was not arbitrary or capricious or without substantial

reason; that plaintiff was x-rayed in order to determine whether he was afflicted with a communicable, contagious, or infectious disease which could spread to other prisoners; that an x-ray procedure, under medical standards, is a proper method of examination for the disease; and that either the prescribing of the x-ray was based upon reasonable grounds for suspecting plaintiff was afflicted with the disease or that the examination complained of was such as could be prescribed for plaintiff, in conformity with sound medical and public health practices, as routine prophylaxis without particular grounds for suspicion, recovery for technical assault and battery would not be authorized.

14. While the petition in this case alleges that defendant selected prisoners to work in the hospital; that he wilfully allowed untrained, unlicensed, and incompetent convicts to operate the x-ray machine without competent supervision; that rather than wearing the customary clothing for convicts as established by rule of the State Board of Corrections, the convicts operating the machine were allowed by defendant to wear clothing without stripes making it "impossible for a person to tell at a glance they were in fact prisoners and not physicians or men in white alike unto the type usually found wearing white clothing in other real hospitals"; and that defendant wilfully failed to warn plaintiff of the nature of the men operating the machine, and by allowing them to wear white clothing prevented plaintiff from discovering their nature, it is nowhere alleged that the convicts operated the machine improperly or committed any act of negligence which caused plaintiff's injuries (which are not set forth, other than an allegation that his eyesight was injured in some undescribed way). Applying the principles contained in the foregoing headnotes, these allegations do not set forth a cause of action on any theory.

15. While it is alleged that no proper technique for radiation shielding was used in the x-ray room where plaintiff was made to stand in line while the machine was in operation, there is no allegation that plaintiff was over-exposed to radiation nor any other allegation which would causally connect the failure to shield with the injury referred to in the preceding headnote. Similarly, if prescribing an x-ray from a distance of fifty miles without ever having seen plaintiff is negligence, there are no allegations to show that this proximately caused the alleged injury.

16. Plaintiff served interrogatories on the defendant requiring answers within 15 days. Before expiration of the time defendant applied for an extension of time within which to make answers, alleging that he was unable to answer at the time, and an ex parte order was entered granting the requested extension. Within the extended time he did answer each interrogatory—some seven months before the judgment appealed from was entered. Error is enumerated upon the granting of the extension without a hearing.

Granting of the ex parte order was error. The statute requires that answers be made within 15 days "unless the court, on motion and notice and for good cause shown, enlarges or shortens the time." *Code Ann.* § 38-2108. Reasonable notice is also required by Art. VI, Sec. IV, Par. VIII of the Constitution (*Code Ann.* § 2-3908). But unless appellant demonstrates that the error is harmful it is not cause for reversal. *Richter v. Cann,* 191 Ga. 103 (11 SE2d 774); *Lowe v. City of Atlanta,* 191 Ga. 76 (11 SE2d 891); *Jacobs v. Rittenbaum,* 193 Ga. 838 (20 SE2d 425); *Mills v. Williams,* 208 Ga. 425 (67 SE2d 212); *Thornton v. Thornton,* 209 Ga. 784 (75 SE2d 749). Since it appears that plaintiff got answers to the interrogatories in ample time to have made any desired use of them long before entry of the judgment appealed from we fail to see how he has been harmed by the delay, or by the entry of the order granting the extension. If the answers were not full, complete or adequate he had a remedy by way of a proper motion, seasonably made, to require that the answers be made full and complete. See *Aetna Life Ins. Co. v. Greene,* 116 Ga. App. 783.

*Judgment reversed for reasons stated in Headnote 11. Felton, C. J., and Hall, J., concur.*

ARGUED OCTOBER 3, 1967—DECIDED NOVEMBER 16, 1967—REHEARING DENIED DECEMBER 1, 1967.

Hal Irwin, *pro se.*

*Arthur K. Bolton, Attorney General, G. Ernest Tidwell, Executive Assistant Attorney General, Marion O. Gordon, Mathew Robins, Assistant Attorneys General,* for appellee.